**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELISSA FERRICK, et al., | No. 1:16-cv-08412 (AJN) |
| Plaintiff, | |
| vs. | |
| SPOTIFY USA INC., et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

4976339v1/015144

**TABLE OF CONTENTS**

I.        THE SETTLEMENT ................................................................................................3

II.       BACKGROUND ...................................................................................................5

          A.   The Litigation......................................................................................... 5

          B.   Settlement Negotiations .......................................................................... 6

          C.   The Settlement Agreement....................................................................... 7

               1.   Release and Payments................................................................... 7

               2.   Costs and Fees .............................................................................. 7

               3.   Distribution Plan .......................................................................... 8

III.      ARGUMENT .......................................................................................................9

          A.   The Proposed Settlement Warrants Preliminary Approval........................................ 9

               1.   Legal Standard Governing Preliminary Approval ........................................ 9

               2.   The Proposed Settlement is Procedurally Fair............................................. 10

               3.   The Proposed Settlement is Substantively Fair ........................................ 11

          B.   The Proposed Settlement Class Should Be Certified................................................ 17

               1.   The Settlement Class Meets the Requirements of Rule 23(a) .................... 18

                    a.   Numerosity ....................................................................... 18

                    b.   Commonality ..................................................................... 18

                    c.   Typicality......................................................................... 19

                    d.   Adequacy ......................................................................... 20

               2.   The Settlement Class Meets the Requirements of Rule 23(b)(3.................. 20

          C.   Notice to the Class ................................................................................... 21

          D.   The Proposed Distribution Plan is Reasonable ......................................... 23

          E.   Proposed Schedule ................................................................................... 24

IV.       CONCLUSION....................................................................................................24

## TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................. 18, 21, 22

*Brecher v. Republic of Argentina*,
   806 F.3d 22 (2d Cir. 2015)............................................................................ 14, 16

*Briseno v. Conagra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ........................................................................... 14

*Cagan v. Anchor Sav. Bank FSB*,
   No. 88-cv-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990).............................. 12

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013)............................................................................... 16

*Charron*,
   874 F. Supp. 2d .................................................................................................. 22

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)......................................................................... 12, 17

*Clark v. Ecolab, Inc.*,
   Nos. 07-cv-8623, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) .......................... 9

*Clem v. Keybank*,
   No. 13-cv-789, 2014 WL 1265909 (S.D.N.Y. Mar. 27, 2014)............................... 9

*D'Alauro v. GC Servs. Ltd. P'ship*,
   168 F.R.D. 451 (E.D.N.Y. 1996) ....................................................................... 21

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)................................................................................. 11

*Danieli v. IBM*,
   No. 08-cv-3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009)........................... 10

*Flores v. Anjost Corp.*,
   284 F.R.D. 112 (S.D.N.Y. 2012) ....................................................................... 17

*Fraley v. Batman*,
   638 F. App'x 594 (9th Cir. 2016) ...................................................................... 16

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)........................................................... 15, 17, 19

*Ge Dandong v. Pinnacle Performance Ltd.*,

No. 10-cv-8086, 2013 WL 5658790 (S.D.N.Y. 2013) .......................................................... 18

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
689 F.3d 229 (2d Cir. 2012)........................................................................................... 21

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................................... 14, 15, 17

*In re Buspirone Patent Litig.,*
210 F.R.D 43 (S.D.N.Y. 2002) ....................................................................................... 21

*In re Currency Conversion Fee Antitrust Litig.,*
263 F.R.D. 110 (S.D.N.Y. 2009) ..................................................................................... 16

*In re Drexel Burnham Lambert Grp., Inc.,*
960 F.2d 285 (2d Cir. 1992)........................................................................................... 20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
574 F.3d 29 (2d Cir. 2009)............................................................................................. 20

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................. 10, 16, 17

*In re Hi-Crush Partners L.P. Sec. Litig.,*
No. 12-cv-8557-CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................... 11

*In re Indep. Energy Holdings,*
210 F.R.D. 476 (S.D.N.Y. 2002) ..................................................................................... 18

*In re Napster, Inc. Copyright Litig., No. C,*
04-1671 MHP, 2005 WL 1287611 (N.D. Cal. June 1, 2005)........................................... 19, 21

*In re NASDAQ Market-Makers Antitrust Litig.,*
176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................................... 10

*In re NASDAQ Mkt. Makers Antitrust Litig.,*
187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................................... 11

*In re Nigeria Charter Flights Contract Litig.,*
233 F.R.D. 297 (E.D.N.Y. 2006) ..................................................................................... 21

*In re PaineWebber Ltd. P'ships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................................... 23

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................................. 10, 15, 17

*In re Traffic Exec. Ass'n–E. R.R.,*
627 F.2d 631 (2d Cir. 1980)
citing Manual For Complex Litigation § 1.46 at 55 n. 10 (1977)............................................ 12

*Johnson v. Brennan, 10-cv-4712-CM,*
   2011 WL 1872405 (S.D.N.Y. May 17, 2011) ....................................... 9, 10, 11, 17

*Kelen v. World Fin. Network Nat. Bank,*
   302 F.R.D. 56 (S.D.N.Y. 2014) ...................................................................... 11

*Maley v. Del Global Techs. Corp.,*
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................. 23

*Marisol A.,*
   126 F.3d ........................................................................................................ 19

*Maywalt v. Parker & Parsley Petroleum Co.,*
   67 F.3d 1072 (2d Cir. 1998) .......................................................................... 10

*Newman v. Stein,*
   464 F. 2d 689 (2d Cir. 1972).......................................................................... 17

*Parker v. Time Warner Entm't Co.,*
   331 F.3d 13 (2d Cir. 2003).............................................................................. 16

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993)............................................................................ 20

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.,*
   Case No. 1:14-cv-04394, 2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) ............ 2

*Strougo v. Bassini,*
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)............................................................. 15

*Tart Lions,*
   2015 WL 5945846 ......................................................................................... 13

*Tiro v. Pub. House Investments, LLC,*
   11 CIV. 7679, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013)............................ 15

*Trinidad v. Breakaway Courier Sys., Inc.,*
   No. 05 Civ. 4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)............................ 19

*Wagner v. NutraSweet Co.,*
   95 F.3d 527 (7th Cir. 1996) .......................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011)................................................................................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005)........................................................................ 10, 22

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982)............................................................................. 18

## **Statutes**

17 U.S.C. §§ 101 ................................................................................................................ 7, 19

## **Rules**

Fed. R. Civ. P.  23(b)(3) .................................................................................................... 18, 23

Fed. R. Civ. P. 23 ............................................................................................................... 22

Fed. R. Civ. P. 23 (a)(3) ..................................................................................................... 20

## **Other Authorities**

Newberg § 11.53 ................................................................................................................. 22

Plaintiffs on behalf of themselves and a proposed class of musical composition copyright owners ("Settlement Class," "Class," or "Class Members")[1] have achieved an industry-leading settlement with Spotify after more than one year of litigation and seven months of intense negotiations, data exchanges, and briefing. This settlement occurred through mediations held before the Honorable Layn R. Phillips, United States District Court Judge (Ret.). Under the terms of the Settlement, the Class will receive a non-reversionary $43.45 million cash payment to provide relief for Spotify's past streaming and hosting of tracks embodying Class Members' compositions. Spotify has also agreed to pay, over and above the Settlement Fund, all Settlement Administration and Notice Costs, which the Settlement Administrator has confirmed will cost between $1 and $2 million. The Settlement further provides that Class Members can receive substantial assistance through the use of the Spotify Track Database and a Settlement Claim Facilitator in determining which of their compositions may be embodied in Spotify tracks streamed during the class period.  Additionally, the Settlement Agreement sets forth a process for Class Members who have claimed past relief to automatically receive ongoing royalty payments calculated at the statutory rate from Spotify for future streaming which could, depending on the number of claims submitted and the future performance of Spotify's service, easily total tens of millions of dollars in future royalties for the Class.  Beyond the past and future monetary relief, the Settlement Agreement also contemplates and provides for significant non-monetary relief to the class, including by setting up a process by which Spotify and Class Counsel will work collaboratively to improve the gathering and collecting of information about composition owners to help ensure those owners are paid their royalties in the future.

The Settlement represents an outstanding result that bestows upon the Class substantial

---

[1] Unless otherwise noted, all Capitalized Terms mean the same as in the Settlement Agreement.

monetary and non-monetary benefit. This case involves novel and hotly contested issues of copyright law in an emerging market, and the Settlement obtained for the Class avoids the myriad risks of continued litigation, including certification of a litigation class, which are heavy risks about which this Court is fully aware. *See, e.g., Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, Case No. 1:14-cv-04394, 2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) (Nathan, J.). The Settlement is also the result of a procedurally fair process. It comes after a year of motion practice and resulted from a comprehensive arms-length negotiation. The settlement negotiations between the parties were extensive: the parties attended two separate in-person mediation sessions conducted by Judge Phillips, a highly experienced and respected mediator, and participated in numerous telephonic conferences with the mediator that occurred on a frequent and regular basis following the ongoing exchange and evaluation of data and information. *See* Declaration of Judge Layn Phillips in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Phillips Decl.") ¶¶ 3–5, 7–8. The support of its terms by Class Counsel and the mediator is further testimony to the fairness of the Settlement.

The proposed Settlement, if approved, will enable the Class to recover a very significant sum and obtain additional non-monetary relief that could not even be obtained even if Class were victorious at trial, while eliminating the risk that the Court strikes Plaintiffs' class action allegations, denies Plaintiffs' motion for class certification, Spotify succeeds in decertifying the Class, Spotify prevails in dispositive motions or at trial, or Spotify prevails in subsequent appeals. At the final approval hearing, the Court will have before it more extensive submissions in support of the Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate in light of all of the relevant factors. At this time, Class Plaintiffs request only that the Court grant preliminary approval of the Settlement so that

Class Members can receive notice of the Settlement and the final approval hearing.

## I.     THE SETTLEMENT

Class Plaintiffs seek preliminary approval of the Settlement Agreement. The settlement negotiations with Spotify were conducted under the auspices of Judge Phillips, and entailed an extensive exchange and evaluation of information and data, with the input of experts in the field, and the development of a detailed claiming and future royalty payments program for the Class. In addition to seeking preliminary approval of the settlement, Class Plaintiffs also ask the Court to approve the proposed form and manner of notice to the Settlement Class and the class administration program, and set a date for final approval.

Plaintiffs seek certification of a Settlement Class defined as:

All persons or entities who own copyrights in one or more musical compositions (a) for which a certificate of registration has been issued or applied for on or before the Preliminary Approval Date; and (b) that was made available by Spotify for interactive streaming and/or limited downloads during the Class Period (December 28, 2012 through the Preliminary Approval Date) without a license.

That definition is subject to certain exclusions.[2]

The Settlement gives the following main benefits to the Class:

- A $43.45 million cash payment to compensate the Class for Spotify making available tracks embodying their composition for past streaming and/or limited download, with no reversion of the Settlement Fund to Spotify.

- Spotify's agreement to pay, over and above the Settlement Fund, all Settlement Administration Costs and Notice Costs, including Publication Notice, which the Settlement Administrator has estimated will cost, in total, between $1 and $2

---

[2]     Specifically, excluded from the Settlement Class are (i) Spotify and its affiliates, employees, and counsel; (ii) federal, state, and local governmental entities; (iii) the Court; (iv) persons and entities who, in 2016, executed a Participating Publisher Pending and Unmatched Usage Agreement in connection with the Pending and Unmatched Usage Agreement, dated as of March 17, 2016, between Spotify and the National Music Publishers' Association, or any other person or entity who has agreed not to bring a claim against Spotify in this Action; and (v) any person or entity who has already provided Spotify with a release with respect to claims concerning musical compositions for which a certificate of registration has been issued or applied for, but the exclusion applies solely with respect to such released claims.

million.

- For each Claimant, Spotify will pay ongoing (future) composition royalties calculated at the statutory rate for all tracks identified by that Claimant.  Spotify will also pay future royalties to Class Members who fail to file claims, but who subsequently come forward and provide proof of ownership.  Spotify will also reserve future royalties for all unmatched tracks.

- A third-party Settlement Claim Facilitator with expertise in identifying unmatched tracks will be available to assist Class Members with identifying the compositions underlying Spotify's tracks that are eligible for royalties and with submitting claims.  The Settlement Claim Facilitator will also proactively seek to identify unknown Class Members to inform them of their right to submit a claim.

- A Future Royalty Payments Program will continue to be available for five years after the Effective Date for Class Members who fail to file claims, to enable those class members to claim future royalties.

- Class Members will be able to submit claims online, using a searchable database of information about tracks that were made available on Spotify during the Class Period, including audio links to play those tracks.  To facilitate the submission of claims, certain fields on the claim form will auto-populate based on information submitted by the Class Member, and Class Members will be able to submit claims in bulk using a templated spreadsheet.

- Spotify will establish an audit procedure for Class Members to verify the accuracy of Spotify's royalty payments.

- Spotify will collaborate with Class Plaintiffs to develop tools or processes to further facilitate the mechanical licensing of content on Spotify's service.

- Spotify and Class Counsel will identify a number of representatives who could participate in a "Best Practices" group that would meet regularly to discuss and implement processes to increase the percentage of usage that can be matched.

- Spotify will request "split" and related information from participating Class Members to facilitate resolution of any conflicts regarding rights.

- Spotify will collaborate with other industry participants to improve the sharing of catalog and other data among publishers, labels, and online music services.

- Spotify will invest time and resources to initiate and support an industry-wide effort (to include representatives of composers, publishers, streaming services, labels, and others) with the goal of obtaining and digitizing all U.S. Copyright Office registration records for musical works registered before January 1, 1978, and making that information far more accessible to the Class.

*See* Declaration of Steven G. Sklaver in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement ("Sklaver Decl."), Ex. C (Settlement Agreement).

## II.    BACKGROUND

### A.    The Litigation

Class Plaintiffs filed their Complaint on January 8, 2016, in the Central District of California.  The complaint asserted one claim for copyright infringement.  *See* Case No. 2:15-cv-00180-BRO-RAOx (C.D. Cal.), Dkt. 1.  Shortly thereafter, Spotify filed motions to strike the class action allegations and to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue to the Southern District of New York.  *Id.* at Dkts. 35, 36.  On March 14, 2016, Class Plaintiffs filed a First Amended Complaint, adding Pastorius as a plaintiff.  Class Plaintiffs then filed a Motion to Consolidate Cases and Appoint Interim Co-Lead Class Counsel, as there was another similar case pending in the Central District of California, filed by other plaintiffs. *Id.* at Dkts. 47, 48.  After extensive briefing, which involved cross-motions to consolidate related cases, Susman Godfrey L.L.P. and Gradstein & Marzano P.C. were appointed Interim Co-Lead Class Counsel.  *Id.* at Dkt. 72.  Class Plaintiffs also prepared and served ample discovery, including requests for production, interrogatories, and third party subpoenas to Harry Fox Agency and the National Music Publishers Association.  *See* Sklaver Decl. ¶¶ 11-12.

Following the Court's order appointing Interim Co-Lead Class Counsel, the parties negotiated a stipulated Protective Order, Case No. 2:15-cv-00180-BRO-RAOx (C.D. Cal.), Dkt. 74, and Class Plaintiffs filed a Consolidated Class Action Complaint ("CAC").  The CAC named Ferrick, Pastorius, and Gerencia 360 Publishing, Inc., as Class Plaintiffs.

After Class Plaintiffs filed their CAC, Spotify refiled its motion to strike class action allegations and motion to dismiss for lack of personal jurisdiction, or in the alternative, to

transfer venue to the Southern District of New York.  *Id.* at Dkts. 83, 84.  After both motions were fully briefed, the Court transferred the case to the Southern District of New York.  *Id.* at Dkt. 114.  Spotify then refiled its motion to strike class action allegations.  Dkt. 148.  After Class Plaintiffs filed their opposition to Spotify's motion to strike class action allegations, and after several stipulated extensions were approved by the Court that extended the time by which Spotify could file its reply brief, the parties executed a term sheet to resolve the case.

### B.     <u>Settlement Negotiations</u>

The Settlement Agreement is the result of extensive arm's length negotiations between the parties, with the assistance of an experienced, highly-credentialed mediator, Judge Phillips. Phillips Decl. ¶¶ 2–3.  The mediation process began in November 2016 and continued into May 2017. Sklaver Decl. ¶¶ 6–10. The parties conducted two full-day, in-person mediation sessions with Judge Phillips on November 7, 2016, and January 11, 2017, and submitted mediation briefing.  *Id.* ¶ 7.  Both in-person sessions were attended by counsel for Plaintiffs and counsel and a corporate representative for Spotify.  *Id.*  Significant data and information were exchanged and evaluated over many months, with ongoing mediation occurring by phone. *Id.* ¶ 10.  The Settlement terms were also negotiated during extensive telephone and email discussions. *Id.* ¶¶ 7, 10.  A confidential short-form term sheet was negotiated in-person before Judge Phillips Newport Beach, California on January 11, 2017.  *Id.* ¶ 8.  A long-form settlement agreement was heavily negotiated thereafter, with the parties participating in telephonic mediation sessions with and submitting mediation briefs to Judge Phillips.  *Id.* ¶ 9; *see also* Phillips Decl. ¶ 7.

Throughout the process, the settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length.  Sklaver Decl. ¶ 10.  Spotify provided extensive confirmatory discovery to Class Counsel, including as to the compositions at issue and

data related to streaming of those compositions.  *Id.*  Class Counsel was well informed of material facts, and retained knowledgeable and experienced experts to develop a thorough understanding of the information provided by Spotify.  *Id.*  The negotiations were hard-fought, with Class Counsel seeking at all times to obtain the best possible result for the Class.  *Id.* ¶ 11.

### C. <u>The Settlement Agreement</u>

#### 1. Release and Payments

Once the Settlement Agreement is final and effective, the Class Plaintiffs and the Settlement Class shall release, as to Spotify and any of its related entities as defined by the Settlement Agreement, any and all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether arising under local, state, federal, or foreign law, whether by Constitution, treaty, statute, regulation, rule, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that were or could have been, or could ever be asserted as a consequence of Spotify's making a musical work available for interactive streaming and/or downloading without a valid license during the defined Class Period (between December 28, 2012, and the Preliminary Approval Date), including Spotify's marketing or promoting that fact, except for an action to enforce the Settlement.  Released Claims include, but are not limited to, the claims asserted in the Action under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, as well as any right to copyright, publicity, or performance under state, local, or foreign law or treaty, and any claim or cause of action seeking damages or injunctive or equitable relief with respect to a musical work that Spotify had made available for interactive streaming and/or downloading at any time during the Class Period, including if Spotify makes any such work available for interactive streaming and/or downloading in the future.  Sklaver Decl., Ex. C at ¶ 17.

#### 2. Costs and Fees

The Settlement Agreement provides that Spotify will pay all notice and administration fees, separate and apart from the $43.45 million cash settlement fund. *Id.* ¶ 9. The Settlement Agreement also provides that, subject to Court approval, Spotify will pay up to $5 million in attorneys' fees over and above the Settlement Fund for the prospective monetary and non-monetary relief obtained for the Class, and that Class Counsel may additionally seek reimbursement of expenses and an award of up to one-third of the Settlement Fund. The Settlement also provides that Class Counsel may request incentive awards of up to $25,000 to each of the Class Plaintiffs be paid from the Settlement Fund for their services as representatives on behalf of the Class. *Id.* ¶ 15.

Under the Settlement Agreement, Class Counsel may enlist the services of a third-party Settlement Claim Facilitator to assist Class Members in making claims. Among other things, the Settlement Claim Facilitator could help to match the compositions embodied in the Spotify tracks covered by the settlement with the tracks; identify owners of unclaimed compositions; and generate electronic claim forms that can be transmitted to the Class Settlement Administrator. Class Members will bear no direct expense for receiving assistance from the facilitator, which will be reimbursed as an expense of the Settlement Fund, subject to Court approval. *Id.* ¶ 3.3.

### 3.   Distribution Plan

To qualify for a payment from the Settlement Fund, a Settlement Class Member must timely and validly submit a completed Claim Form containing certain information identifying the Claimed Musical Work that the Settlement Class Member contends that Spotify made available for interactive streaming and/or limited downloading during the Class Period without a license. Class Members have plenty of time to file a claim: the Claim Deadline shall be 210 days after the Settlement Claims Start Date (which shall be 30 days after the Effective Date).

Each Authorized Claimant shall receive a minimum guaranteed payment from the Net

Settlement Fund.  Authorized Claimants whose works have been streamed more than 100 times additionally shall receive a payment that shall be a percentage of the Net Settlement Fund remaining after deduction for the minimum guaranteed payments determined by dividing (i) the total number of streams (through the Preliminary Approval Date) for the Claimed Musical Works of the Authorized Claimant by (ii) the total number of streams (through the Preliminary Approval Date) for all Claimed Musical Works identified by all Authorized Claimants.  In the event that an Authorized Claimant is only a partial owner of the copyright for a particular Claimed Musical Work, the number of streams for that Musical Work shall be discounted in accordance with that Authorized Claimant's ownership share.  Sklaver Decl., Ex. C ¶ 3.5.  None of the money from the Settlement Fund shall revert to Spotify.

## III.    ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval

#### 1.    Legal Standard Governing Preliminary Approval

Preliminary approval of the Settlement is appropriate if "the proposed Settlement Agreement is within the range of possible settlement approval, such that notice to the Class is appropriate." *Johnson v. Brennan*, 10-cv-4712-CM, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011).  Preliminary approval "simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement." *Clem v. Keybank*, No. 13-cv-789, 2014 WL 1265909, at *1 (S.D.N.Y. Mar. 27, 2014). "After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input." *Id.* Preliminary approval "requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Id.* (quoting *Clark v. Ecolab, Inc.,* Nos. 07-cv-8623, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)). Preliminary approval is granted where the settlement "has no obvious defects" and the allocation plan is

"rationally related to the relative strengths and weaknesses of the respective claims asserted." *Danieli v. IBM*, No. 08-cv-3688, 2009 WL 6583144, at *4–5 (S.D.N.Y. Nov. 16, 2009).

In conducting a preliminary approval inquiry, a court considers both the negotiating process for the settlement (procedural fairness) and the settlement's substantive terms (substantive fairness). *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (citations omitted). A settlement process is procedurally fair where "the Settlement Agreement is the result of extensive, arm's length negotiations by counsel well-versed in the prosecution of [the asserted type of] actions." *Johnson*, 2011 WL 1872405, at *1. "A settlement is substantively fair for purposes of preliminary approval so long as the terms of the settlement are within the "range of possible approval." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*"). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1998).

The settlement of complex class action litigation is strongly favored. The Second Circuit is "mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

## 2.     The Proposed Settlement is Procedurally Fair

The Settlement was the result of extensive, arm's length negotiations by counsel well-versed in copyright and class action litigation. The terms of the Settlement were vigorously negotiated, and included two mediation sessions in Newport Beach, California, all attended by

10

Class Counsel and counsel and a corporate representative for Spotify; as well as numerous telephone calls and emails.  Phillips Decl. ¶ 5.  The discussions culminated in an executed confidential term sheet after the parties exchanged materials pertaining to Spotify's finances, participated in numerous technological tutorials, and briefed motions for appointment as class counsel and to dismiss.  *Id.* ¶ 5; Sklaver Decl. ¶¶ 7–10.  All this makes the Settlement procedurally fair, and clearly so.  *See Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014). The extensive participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive." *Johnson*, 2011 WL 1872405, at *1; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement . . . helps to ensure that the proceedings were free of collusion and undue pressure.").

Further, it is the opinion of Class Counsel and an experienced mediator that this settlement is fair, reasonable, and adequate.  Sklaver Decl. ¶ 18; *see also* Phillips Decl. ¶ 9. Courts give counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557-CM, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014).

### 3.     The Proposed Settlement is Substantively Fair

The Settlement falls within the "range of possible settlement approval," which is sufficient for preliminary approval.  *Johnson*, 2011 WL 1872405, at *1. Where, as here, counsel for the parties engaged in diligent arm's-length negotiations, a settlement is entitled to a presumption of fairness. *See In re NASDAQ Mkt. Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ III*"). The Settlement provides for a substantial monetary benefit— $43.45 million in cash, another $1-2 million in notice and administration costs, plus a right to future royalties—as well as substantial non-monetary relief. Sklaver Decl., Ex. C at ¶¶ 3.1, 4-9. These are exceptional results.

The $43.45 million payment, by istelf, is a remarkable recovery.  According to one report, Spotify agreed to pay "between $16 million and $25 million" in a prior agreement with members of the National Music Publishers' Association ("NMPA"), who elected to pursue and negotiate their claims directly with Spotify rather than participate in this class action.  Ben Sisario, *Spotify Reaches Settlement With Publishers in Licensing Dispute*, *N.Y. Times*, Mar. 18, 2016, at B6.  The NMPA agreement already resolved the royalty rights as to a substantial portion, and likely the majority, of the music streamed on Spotify; indeed, NMPA President David Israelite has publicly stated that "over 96% of the music publishing community" are participating in the NMPA settlement.  Paul Resnikoff, *How Spotify Crushed a $200 Million Songwriter Lawsuit*, Digital Music News (July 12, 2016), at http://www.digitalmusicnews.com/2016/07/12/spotify-crushing-david-lowery-lawsuit/.  The Settlement nonetheless would provide the Class with a substantial premium over the recovery obtained by the NMPA for its members, even though the Class comprises a relatively small portion of the music streamed on Spotify.

At the preliminary approval stage, the Court need find only "probable cause" that the settlement agreement is fair enough to justify class notice and a full fairness hearing. *In re Traffic Exec. Ass'n–E. R.R.,* 627 F.2d 631, 634 (2d Cir. 1980) (citing Manual For Complex Litigation § 1.46 at 55 n. 10 (1977)). The $43.45 million recovery, which represents a greater recovery than the NMPA settlement, is well within the range of possible approval.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n. 2 (2d Cir. 1974) (in theory, a fraction of one percent of the overall damages could be a reasonable and fair settlement); *Cagan v. Anchor Sav. Bank FSB,* No. 88-cv-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately

$121 million"). The Settlement is clearly within the "range of *possible* approval," which is all that preliminary approval requires. *Tart Lions*, 2015 WL 5945846, at *5 (emphasis added).

Additionally, the prospective monetary and non-monetary terms of the settlement have substantial value.  Spotify has agreed to pay ongoing royalties for all tracks validly identified by Class Members, as well as ongoing royalties for Class Members who miss the Claim Deadline, but later come forward and provide proof of ownership.  Given the millions of tracks streamed from Spotify's service, these ongoing royalties will provide a substantial benefit.  In addition, a third-party Settlement Claim Facilitator will be available to help Class Members submit claims for both a share of the Net Settlement Fund and ongoing royalties, and also will identify unknown Class Members and remind them of their right to submit a claim. Spotify also has agreed to maintain a Future Royalty Payments Program Website for five years after the Effective Date to assist Class Members in claiming royalties, and to make information available on its own website in the future for Class Members who may thereafter pursue claims to future royalties.

Further, Spotify has agreed to undertake substantial efforts to mitigate the problem of unmatched tracks.  First, Spotify and Plaintiffs' Counsel will appoint members to a "Mechanical Licensing Committee" that would meet regularly to discuss and implement processes to increase the percentage of usage that can be matched and otherwise to facilitate the mechanical licensing of content on Spotify's service.  Second, Spotify will request split and related information from participating Class Members to facilitate resolution of any conflicts regarding rights.  Third, Spotify will collaborate with other industry participants to improve the sharing of catalog and other data among publishers, labels, and online music services.  Fourth, Class Members may request an audit to verify the accuracy of Spotify's royalty payments on a quarterly basis.  Fifth, Spotify will invest time and resources to initiate and support an industry-wide effort (to include

representatives of composers, publishers, streaming services, labels, and others) with the goal of digitizing all U.S. Copyright Office registration records for musical works registered before January 1, 1978 and making such digitized content freely available.  Class Members will see the impact of such relief on other platforms on which their tracks are streamed.

While there is no need on preliminary approval to consider the *Grinnell* factors, the *Grinnell* factors suggest that the Settlement warrants final approval; *a fortiori*, the Settlement is well within the "range of possible approval" sufficient to warrant preliminary approval.  First, the litigation was complex, as attested by the parties' briefing on the motions to dismiss and motions to strike.  By reaching a favorable settlement prior to dispositive motions or trial, Class Plaintiffs seek to avoid significant expense and delay, and instead ensure a favorable recovery for the Class as soon as possible, and without the need to incur millions of dollars in expert costs and other litigation expenses that would deplete the Settlement Fund if a settlement were reached later.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  The Settlement ends future litigation and uncertainty.  Briefing has not yet closed on Spotify's motion to strike class action allegations, and the parties faced substantial discovery burdens, followed by briefing on class certification and trial.  There was a meaningful risk that the Court would strike class allegations at the outset or would deny class certification— and that risk was heightened by the transfer of the case from the Ninth Circuit to this Court. *Compare*, *e.g.*, *Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121, 1226 (9th Cir. 2017) (rejecting administrative feasibility requirement for class certification) *with Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015) (adopting that requirement).

Certainly for its part, Spotify would have sought to raise its myriad defenses at trial, for each of a large number of individual musical works, ensuring a long and protracted trial—one that would have been highly burdensome and expensive for both the Class Plaintiffs and Spotify. Even if Class Plaintiffs were to prevail on class certification and trial, post-verdict and appellate litigation may have lasted for years. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class"); *Prudential*, 163 F.R.D. at 210 ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush." (internal quotation marks omitted)). This factor weighs in favor of preliminary approval.

The second *Grinnell* factor is premature. Notice of the settlement and its details have not yet been issued to the class. This factor is neutral. The question raised by the third factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Tiro v. Pub. House Investments, LLC*, 11 CIV. 7679, 2013 WL 4830949, at *7 (S.D.N.Y. Sept. 10, 2013) (citation omitted)). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted). Counsel had ample information against which to measure the adequacy of the Settlement. The parties participated in comprehensive settlement negotiations, which included the exchange of a significant amount of information including tens of millions of rows of Spotify's data and substantial work on the part of experts on both sides to evaluate the potential settlement value of the case. *See Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to class members' identities and to Defendant's

15

time and pay practices and where counsel's negotiations had "been in no way collusive"); *Global Crossing,* 225 F.R.D. at 458.  This factor weighs in favor of preliminary approval.

Regarding factors 4, 5 and 6, "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty."  *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009). The Court is well aware of the challenges that Plaintiffs would face at class certification and at trial.  The Settlement removes substantial uncertainties about Plaintiffs' chances of success or potential decertification.  *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("[T]he litigation risks attendant to these possibilities [like decertification] weighed heavily in favor of the fairness of a settlement."). These factors weigh in favor of preliminary approval.

Indeed, Spotify's motion to strike class allegations underscores the obstacles that Plaintiffs would have faced in order to obtain recovery, much less a class-wide recovery. For example, Spotify had contended that Plaintiffs' proposed class definition was an improper and unascertainable fail-safe class, and that complexities in trying Spotify's affirmative defenses would have precluded Plaintiffs from satisfying the requirements of Rules 23(a) and 23(b)(3). *See* Dkt. No. 150, at 7-30.  Among those affirmative defenses was Spotify's contention that it had implied licenses (*id.* at 20-21), the right to distribute musical compositions as a consequence of being authorized to distribute sound recordings (*id.* at 21), and a due process right to oppose class-wide aggregation of statutory damages (*id.* at 28-29 (citing, *e.g.*, *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003)).  In fact, the Ninth Circuit recently affirmed the final approval of a class settlement under which class members would receive at most two percent of the requested statutory damages at issue because of the "due process concerns" posed by aggregating class members' claims.  *Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016).

Factors 7, 8, and 9 all weigh in favor of preliminary approval.  Regarding factor 7, even if

Spotify could withstand a greater judgment, this does not undermine the fairness of the Settlement even for final approval. *Global Crossing*, 225 F.R.D. at 460 ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate.").   For factors 8 and 9, the determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"   *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).   "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"   *Id*. (quoting *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972)).   The $43.45 million cash payment by Spotify alone represents a significant recovery in light of the estimated damages and the risks of litigation. *See Grinnell Corp*., 495 F.2d at 455 & n. 2. The settlement is even more outstanding when the benefits of the payment of royalties going forward, Spotify's efforts to mitigate the problem of unmatched tracks on an industry-wide basis, and the risks of litigation are weighed.

Thus, the *Grinnell* factors weigh strongly in favor of preliminary approval here.

### B.   The Proposed Settlement Class Should Be Certified

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (internal quotation marks omitted). Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205.  Conditional certification for settlement purposes facilitates notice of a preliminarily approved settlement. *See, e.g., Johnson*, 2011 WL 1872405, at *1 (granting

17

preliminary approval and conditionally certifying a settlement class).

A court may certify a class that, as here, satisfies the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982). Manageability under Rule 23(b)(3) is not at issue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . . .").

### 1.      The Settlement Class Meets the Requirements of Rule 23(a)

#### a.      Numerosity

The Second Circuit generally "find[s] a class sufficiently numerous when it comprises forty or more members." *In re Indep. Energy Holdings*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). Here, there are likely hundreds of thousands of Class Members.

#### b.      Commonality

Second, commonality requires identifying a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This "does not require that all class members' claims or circumstances be identical, so long as class members share a *single* question of law or fact in common." *See* Dkt. 135 at 17 (emphasis added).

The only cause of action in this case is for copyright infringement.  Because Spotify streamed unlicensed works of all Class Members, the lawfulness of Spotify's conduct is a common question for the Settlement Class. *See Ge Dandong v. Pinnacle Performance Ltd*., No. 10-cv-8086, 2013 WL 5658790 *4 (S.D.N.Y. 2013) ("The test for commonality . . . is not demanding and is met so long as there is at least one issue common to the class." (quotation marks omitted)).  Because the Settlement eliminates the need to hold a trial and Spotify would be

waiving its numerous affirmative defenses that it contends raised individualized issues, this case involves a number of common issues that satisfy Rule 23(a)(1)'s commonality requirement, including, *inter alia*, (1) whether Spotify reproduced and distributed musical compositions through interactive streaming and/or limited downloads without a license; (2) whether Spotify's reproduction and distribution of musical compositions through interactive streaming and/or limited downloads without a license constitutes direct infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.; (3) whether Spotify acted willfully; (4) the basis and method for determining and computing damages, including statutory damages; and (5) whether Spotify's infringing conduct is continuing, thereby entitling the members of the class to injunctive or other relief. *See* CAC ¶ 35. *See In re Napster, Inc. Copyright Litig.*, No. C 04-1671 MHP, 2005 WL 1287611, at *3 (N.D. Cal. June 1, 2005) (commonality requirement satisfied where there were a number of common issues based on the factual predicate of defendant Napster's conduct).

### c.    Typicality

Third, Rule 23(a) requires that claims of Class Plaintiffs be typical of the claims of other Class Members. *See* Fed. R. Civ. P. 23(a)(3).  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." Frank, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted).  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the

typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Typicality is present because Class Plaintiffs each allege that they suffered an injury from Spotify's alleged copyright infringement, just as the rest of the Class alleges.

d.   <u>Adequacy</u>

Adequacy of representation is measured by two standards: "First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "[T]o defeat a motion for certification … the conflict must be fundamental." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quotations omitted).

The Settlement Class satisfies both requirements. Judge O'Connell previously found that Interim Co-Lead Class Counsel have the requisite qualifications and experience to represent the proposed Class, Case No. 2:15-cv-09929-BRO-RAOx (C.D. Cal.), Dkt. 57 at 10, and Class Counsel prosecuted the case vigorously, thoroughly examining the merits before reaching this hard-fought, arm's-length Settlement. Susman Godfrey L.L.P. has significant experience in prosecuting and defending class actions, and Gradstein & Marzano, P.C. has significant experience in prosecuting and defending copyright actions, which make the firms particularly well-suited to serve as Class Counsel.  Sklaver Decl. ¶¶ 3-4. Nor are there any conflicts between or among the Class Plaintiffs and other Class Members.

**2.  The Settlement Class Meets the Requirements of Rule 23(b)(3**

Certifying a class for settlement purposes requires a showing that "questions of law or fact predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Manageability is not at issue because the Settlement obviates the need for a trial and

20

Spotify would be waiving its affirmative defenses. *Amchem Prods.*, 521 U.S. at 615.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623-24. Rule 23(b)(3) requires, in pertinent part, that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The predominance inquiry does not require a plaintiff to "show that the legal and factual issues raised by the claims of each class member are identical." *Napster,* 2005 WL 1287611, at *7.  Instead, the established focus of the inquiry is on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).  The predominance requirement is relaxed for a settlement class because "with a settlement class, the manageability concerns posed by numerous individual questions of reliance disappear." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012).

Superiority is also satisfied.  The Court must balance the advantages of class treatment against alternative methods of adjudication. *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 301 (E.D.N.Y. 2006). The advantages include "efficient resolution of the claims or liabilities of many individuals in a single action" and "the elimination of repetitious litigation and possibly inconsistent adjudications." *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996).  Here, any interests of Class Members in individually prosecuting claims are outweighed by the efficiency of the class device. *See In re Buspirone Patent Litig.,* 210 F.R.D 43, 58 (S.D.N.Y. 2002) ("the difficulty of numerous individual lawsuits indicates that a class action is superior to other methods for a fair and efficient adjudication of the controversy.").

### C.   <u>Notice to the Class</u>

There are two requirements for notice. First, "Courts in this Circuit have explained that a

Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally and informs the Class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Charron*, 874 F. Supp. 2d at 191; *accord Wal-Mart Stores, Inc.*, 396 F.3d at 113-14.   Second, the manner of sending notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617.

The form of notice here satisfies due process because it informs Class members of the terms of the settlement and their options in plain language. *See Newberg* § 11.53 (the form of notice is "adequate if it may be understood by the average class member").   The long-form, publication, and postcard notices, which are attached to the Settlement, Sklaver Decl., Ex. C (at Exs. A-C), communicate in plain language the essential elements of the Settlement and the options available to Class Members in connection with the Settlement.

The manner of sending that notice to the class also satisfies due process.   Spotify will obtain from the U.S. Copyright Office the names, addresses, and email address for all registered owners of musical compositions if that information is maintained by the U.S. Copyright Office in digitally searchable format (*i.e.*, those copyright registrations that were submitted electronically after January 1, 2008).   Although that category is broader than the Class, Spotify will pay for having postcard notices mailed to every unique mailing address in that database and emailed to every unique email address in that database.   Decl. of Stephen Cirami ¶¶ 37-40.

In addition, Class Members will receive publication notice of the Settlement.   That notice will appear in the print editions of *Rolling Stone*, *Billboard*, *Music Connection*, and *Variety*.   *Id.* ¶ 22.   The publication notice or banner advertisements will be placed on targeted websites and social media likely to be viewed by Class Members such as Yahoo! Audience Network,

Facebook, Conversant, and on the following websites: American Songwriter, Fader, Hits Daily Double (Hits Magazine), BillboardBiz, Pitchfork, Drowned in Sound, and Consequence of Sound, and targeted LinkedIn Ads, Reddit Promoted Links, and Twitter Promoted Tweets.  *Id.* ¶¶ 24-34; *see also* Decl. of Marian Dicus ¶¶ 6-13.  The Settlement Administrator will also issue a press release, and a link regarding the settlement will be placed on Spotify's "Spotify for Artists" webpage at artists.spotify.com.  Cirami Decl. ¶¶ 35-36; Dicus Decl. ¶¶ 14-17.

### D.        The Proposed Distribution Plan is Reasonable

A distribution plan is fair and reasonable as long as it has a "reasonable, rational basis." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).  Because mathematical precision is impossible in calculating claims for a large class, courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

Each Authorized Claimant shall receive a minimum pro rata payment from a fixed portion of the Net Settlement Fund, regardless of the number of times their Claimed Works have been streamed or downloaded.  Additionally, Authorized Claimants whose Claimed Works have been streamed more than 100 times (or such other threshold as may be appropriate after consideration of the claims submitted) shall receive a payment equal to the percentage of the remaining Net Settlement Fund determined by dividing (i) the total number of streams (through the Preliminary Approval Date) for the Claimed Musical Works of the Authorized Claimant by (ii) the total number of streams for all Claimed Musical Works (through the Preliminary Approval Date) identified by all Authorized Claimants.  In the event that an Authorized Claimant is only a partial owner of the copyright for a particular Claimed Musical Work, the number of streams for that Musical Work shall be discounted to reflect that claimant's ownership share.

E.    **Proposed Schedule**

Class Plaintiffs proposes the following dates for the deadlines for the notice plan and for

the final fairness hearing, subject to the convenience of the Court:

| EVENT | DAYS FROM PRELIMINARY APPROVAL | PROPOSED DATE/DEADLINE (if Preliminary Approval Granted June 2, 2017) |
|---|---|---|
| Send notice to Class members | 35 days | July 7, 2017 |
| Deadline to commence Publication Notice | 45 days | July 17, 2017 |
| Settlement Administrator to file proof of notice | 65  days | August 7, 2017 |
| Deadline to request exclusion from the Class or objections to Settlement | 75 days | August 16, 2017 |
| Deadline for Class Counsel to move for Final Approval and Fee and Cost award | 105 days (= 21 days before Final Approval Hearing) | September 15, 2017 |
| Final Approval and Fee and Cost Award Reply Briefs | 119 days (= 7 days before Final Approval Hearing) | September 29, 2017 |
| Final Approval Hearing | 126 days | October 6, 2017 |

IV.   **CONCLUSION**

Class Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed

Settlement as within the range of fairness, reasonableness and adequacy; (ii) certify the

Settlement Class and appoint Plaintiffs as Class Representatives and Susman Godfrey L.L.P. and

Gradstein & Marzano P.C. as Class Counsel for Settlement purposes; (iii) approve the proposed

form and manner of notice to the Settlement Class; and (iv) schedule a date and time for a

hearing to consider final approval of the Settlement and related matters.


Dated:  May 27, 2017                      Respectfully submitted,


                          By: /s/ Steven G. Sklaver
                             Steven G. Sklaver


24

Steven G. Sklaver (pro hac vice)
Kalpana Srinivasan (pro hac vice)
Krysta Kauble Pachman (pro hac vice)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars
Los Angeles, California  90067-6029
Telephone: 310-789-3100
Facsimile: 310-789-3150
ssklaver@susmangodfrey.com
ksrinivasan@susmangodfrey.com
kpachman@susmangodfrey.com

Stephen E. Morrissey (pro hac vice)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
smorrissey@susmangodfrey.com

Jacob Buchdahl (JB1902)
Geng Chen (GC2733)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, New York 10019
Telephone: 212-336-8330
Facsimile: 212-336-8340
jbuchdahl@susmangodfrey.com
gchen@susmangodfrey.com

Henry Gradstein (pro hac vice)
Maryann R. Marzano (pro hac vice)
GRADSTEIN & MARZANO, P.C.
6310 San Vicente Boulevard, Ste 510
Los Angeles, California 90048
Telephone: 323-776-3100
hgradstein@gradstein.com
mmarzano@gradstein.com

*Interim Co-Lead Class Counsel*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2017 I caused the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Southern District of New York, on all parties registered for CM/ECF in the above-captioned matters.

Dated: May  26, 2017                              */s/ Steven G. Sklaver*                    
                                               Steven G. Sklaver