UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA FERRICK, et al.,                    1:16-cv-08412 (AJN)

                Plaintiff,

SPOTIFY USA INC., et al.,                   SEPTEMBER 12, 2017

                Defendant.

## OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT AGREEMENT AND NOTICE OF INTENT TO APPEAR

Pursuant to the Court's Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Dkt. # 177), the Settlement Class Members identified in Exhibit A annexed hereto, and each of them (collectively, the "Objectors"), by their attorneys Donahue Fitzgerald LLP and Pullman & Comley LLC, respectfully submit these Objections to the proposed class action settlement reached in *Ferrick et al. v. Spotify USA Inc. et al.*, No. 1:16- cv-8412 (AJN).

Counsel for Objectors hereby give notice that counsel will appear on behalf of Objectors at the December 1, 2017, Fairness Hearing.

## I. PRELIMINARY STATEMENT

The Settlement Agreement[1] is procedurally and substantively unfair to Settlement Class Members because it prevents meaningful participation by rights holders and offers them an unfair dollar amount in light of Spotify's ongoing, willful copyright infringement of their works.

The Objectors are songwriters and other owners of copyrighted works that are the subject of the Settlement Agreement. Each Objector is a member of the Settlement Class. Each Objector

---

[1]  Capitalized terms not otherwise defined have the meanings set forth in the Settlement Agreement. Dkt. # 176-3 ("Settlement Agreement" or "Settlement").

has attempted to opt out of the Settlement Class, but has not been able to comply fully with the directions given in the long-form Notice of Settlement because of each Objector's inability to provide an exhaustive list of copyright registration numbers for the works being opted out of the settlement as provided in the long-form Notice of Pendency of Class Action.[2]

## OBJECTIONS

## I.   LEGAL STANDARD

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the agreement] is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). The "fair, reasonable and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. See *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citations omitted).

## II.   THE SETTLEMENT AGREEMENT SHOULD NOT BE APPROVED BECAUSE IT IS PROCEDURALLY UNFAIR

The Settlement Agreement is procedurally unfair because it is not the result of arm's-length, good faith negotiation between class counsel and Spotify, but instead a collusive effort that does not adequately protect the critical interests of the class. See Fed. R. Civ. P. 23(a)(4) (requiring that class representatives "fairly and adequately protect the interests of the class"); *see*

---

[2] An ambiguity exists between the long form Notice of Pendency of Class Action, Proposed Settlement and Hearing (the "Long Form Notice") and the Court's Preliminary Approval Order, Dkt. # 177. The Long Form Notice states that claimants seeking to opt out of the Settlement Class must include "the copyright registration numbers for your musical compositions that you are excluding from the settlement" (Long Form Notice at 5, item 13), suggesting that claimants may exclude themselves from the settlement for some compositions but remain in the Settlement Class for others. However the Preliminary Approval Order states that to be considered valid, a Request for Exclusion must contain "the U.S. copyright registration number (or copyright registration application number) for each copyrighted musical composition owned in whole or in part by the Settlement Class Member." Dkt # 177 (Preliminary Approval Order) at 7 ¶ 16. The Order further provides that only those compositions for which a copyright registration number is provided may be validly excluded. *Id*. ¶17. However, the Order does not explicitly state that Settlement Class Members who do not provide copyright registration numbers remain in the Settlement Class as to any work for which a registration number is not provided. Read together, paragraphs 16 and 17 of the Order suggest that members of the Settlement Class should exclude themselves entirely or not at all, and may not elect to exclude themselves for some compositions but remain in the Settlement Class for others.

*also Charron*, 731 F.3d at 247. As a result, the Settlement Agreement is not only inadequately protective, but it is overbroad in violation of Rule 23 and the Due Process Clause of the U.S. Constitution.

The Settlement Agreement is procedurally unfair in that it requires Settlement Class Members to provide the copyright registration numbers of compositions that they own in order to exclude themselves from the settlement. In the music industry, copyright registration numbers are not normally used as identifiers in the normal course of administering and tracking musical compositions. Declaration of Randall D. Wixen, filed concurrently herewith ("Wixen Decl.") ¶ 13. Indeed, Spotify itself does not use copyright registration numbers to track streams. *Id.* ¶ 12. Most artist composers engage a music publishing company to administer their copyright holdings, which are cataloged and tracked not by the copyright registration number, but by other industry standard numbers such as the International Standard Recording Code (ISRC) number, the International Standard Work Code (ISWC), or by unique identifying numbers assigned to the work by performing rights organizations or other royalty agents. *Id.* ¶¶ 13, 18. Defendant Spotify clearly recognizes this practice, since it has agreed as part of the Settlement to provide a database by which Settlement Class Members may search by track title or input an ISRC number or Spotify track number, and through that number auto-populate track-specific data into an online Claim Form.  Settlement Agreement ¶ 3.2(d)(v)-(vi).[3]

Requiring individual Settlement Class Members to provide copyright registration numbers in order to exclude themselves from the Settlement is economically and practically prohibitive for the vast majority of songwriters who, as is typical in the industry, rely on music publishers and other agents to administer their copyrights under a system that does not use

---

[3] However, even this Track Database is not available to Class Members who wish to exclude themselves; it will only be made available for Settlement Class Members who wish to opt into the Settlement Agreement. *Id.* ¶¶ 1.56, 3.2(c), 3.2(d)(vi).

copyright registration numbers in the ordinary course of business. Wixen Decl., ¶¶ 8, 13. Further, it is no easy matter for a songwriter to obtain copyright registration number information, especially for compositions registered prior to 1978. The Copyright Office does not provide a publicly searchable online database of copyright registrations issued before 1978, and therefore someone who needs to look up a copyright registration number must either travel to Washington, D.C. and search through 45 million copyright cards, or pay a Copyright Office researcher a minimum of $400 to look up the information. *Id.* ¶ 16.[4] Depending on the number of works owned by a particular Settlement Class Member, the cost of locating the copyright records may be prohibitive, and, in many cases, will exceed the amount of remuneration the copyright holder would receive under the Settlement. *Id.* ¶ 14. Moreover, the time required to complete the research is likely to exceed the limited amount of time afforded Settlement Class Members to file claims, and for the Objectors has already exceeded the time afforded them to exclude themselves. *Id.* ¶ 15.[5]

The Settlement Agreement is also procedurally unfair in that it bars Settlement Class Members from employing agents and delegates such as music publishers from filing Requests for Exclusion or claim forms on behalf of their composer clients. *See* Wixen Decl. ¶ 7 (citing Dkt. # 176-3 (Settlement Agreement) at 61 ¶ 13.6). Since most songwriters delegate

---

[4] Spotify is well aware of the specific difficulty of identifying class members who own pre-1978 works. In fact, in the Settlement Agreement, Spotify has agreed to create an entire "Copyright Data Sharing Committee" to discuss "digitization of pre-1978 U.S. Copyright Records for free use by the public." Settlement Agreement ¶¶ 7.1-7.2.

[5] Wixen Music Publishing, Inc., a music publishing house that administers and tracks rights for over 2,000 songwriters, including the Objectors, hired a team of researchers and data entry specialists to work non-stop for more than a month merely to identify and match the ISRC with the copyright registration number for each of the copyrighted works owned by its clients. Wixen Decl., ¶ 15. In four weeks, Wixen has been able to obtain approximately 12,000 relevant copyright registration numbers from the more than the 60,000 compositions it represents. *Id.* The allotted 75 days (from June 28, 2017 to September 12, 2017) is insufficient for rights owners to exclude themselves given the painstaking task of matching ISRCs with copyright numbers. Externalizing the cost of this data problem by putting it on publishers like Wixen is unreasonable, and may preclude identification of a multitude of compositions, especially for publishers like Wixen who have large catalogs.  For many smaller rights holders, this is an administrative and cost prohibitive challenge that will likely prevent many from participating at all in the Settlement Agreement, whether by opting in or out. *See* Wixen Decl. ¶ 14.

administration of their copyright rights to these administrators, the administrators are far more likely to have access to the copyright registration information demanded, as well as the financial resources to research the information. Wixen Decl. ¶¶ 8-9. Requiring a Settlement Class Member to provide detailed information that it does not have and would have to incur considerable expense to obtain in order to exclude itself from the settlement makes as little sense as barring the Settlement Class Members' delegate, who is more likely to have the required information, from supplying it on behalf of the Settlement Class Member. Both restrictions are artificial, appear to be designed to defeat Settlement Class Members' exclusion rights, and violate the requirement of procedural fairness set forth in *Charron*.

## III.  THE SETTLEMENT AGREEMENT SHOULD NOT BE APPROVED BECAUSE IT IS SUBSTANTIVELY UNFAIR

The Settlement Agreement is also substantively unfair.

The language of the Settlement Agreement at paragraph 4.1 suggests that Settlement Class Members will be forced to license their works to Spotify on a prospective basis. It does not allow Settlement Class Members to collect their settlement payment and walk away. If this is correct, Spotify has been given the retroactive right to obtain compulsory licenses and pay the statutory rate moving forward. This is contrary to the provisions of the Copyright Act, where the failure to timely acquire a compulsory license "forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement under section 501 [of the Copyright Act] and fully subject to the remedies provided by sections 502 through 506 and 509." 17 U.S.C. § 115(b)(2). *See also Leo Feist, Inc. v. Apollo Records, N. Y. Corp.,* 300 F. Supp. 32, 42-43 (S.D.N.Y. 1969) ("Since the notice provisions are the 'keystone' of the mandatory licensing scheme under the Copyright Law, violations should be dealt with strictly."), *aff'd*, 418 F.2d 1249 (2d Cir. 1969). Further, if

Spotify breaches the terms of the license, the rights-holder can never terminate the license as the Settlement Agreement grants Spotify the right to obtain perpetual compulsory licenses. *See* Settlement Agreement ¶ 4.1.

With this Settlement Agreement, Spotify will actually benefit from its infringement. Spotify will not need to (i) gather the copyright registration information itself to identify and pay rights holders, (ii) provide the names of the songs it believes to have infringed prior to the opt out date, (iii) negotiate direct licenses with rights holders, nor (iv) worry about faults or problems in its future licensing system because participating class members may not sue. *See* Settlement Agreement ¶¶ 17.1-17.5 ("Releases"). The result is an end run around both the existing compulsory licensing system and arm's-length license negotiations, to create a retroactive compulsory copyright system for compositions at a bargain rate.

Objectors as a group constitute more than five hundred members of the Settlement Class. As a group, they assert that the Settlement Agreement is substantively unfair because the $43 million Settlement Fund, of which at least one-third is intended to go not to the class but instead to class counsel as attorneys' fees (*see* Settlement Agreement ¶15.1), is grossly insufficient both in light of Spotify's ability to withstand a greater judgment and the best possible recovery in this case.

More specifically, the Settlement Agreement is unfair because it could pay as little as $3.82 for each composition whose copyright Spotify infringed. From the Settlement Fund of $43 million, about $28.7 million will remain after the proposed payment of class counsel's attorney's fees. According to its own publicity, Spotify has about 30 million songs.[6] If as few as one-quarter of those songs, 7.5 million, were unlicensed then, taking the $28.7 million left in the

---

[6] https://press.spotify.com/us/about (Accessed Sep. 8, 2017).

Settlement Fund after attorneys' fees are paid and dividing that number by 7.5 million songs, the result is a settlement payment of $3.82 per infringed song. As the Court is well aware, Spotify faces potential liability of up to $150,000 per infringed composition for willful infringement and $30,000 for nonwillful infringement, plus attorneys' fees and costs. While a discount of some amount is to be reasonably expected as part of a compromise settlement, the discount potentially afforded Spotify in this case is a 98.7% discount for nonwillful infringement and a discount for willful infringement so close to 100% as to give Spotify a practical free pass on willful infringement.

Spotify and class counsel are also colluding to give Settlement Class Members an unfairly small amount of the *real* settlement fund. The true amount Spotify is offering to pay to settle this litigation is $48 million: the $43 million Settlement Fund plus an additional $5 million payment directly to class counsel. *See* Settlement Agreement ¶ 15.1. Spotify has agreed not to contest a request of up to one-third of the $43 million Settlement Fund by class counsel. If the Court approves this scheme, then Settlement Class Members will receive only $28.67 million, or less than sixty percent (60%) of the $48 million Spotify is willing to pay, while the class counsel will receive more than 40%. This amount is inadequate both as a total amount and as a percentage of the *real* settlement fund.

Courts determine whether a proposed class action settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). These factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* In assessing the substantive fairness of the settlement, the Court "must eschew any rubber stamp approval in favor of an independent evaluation, yet . . . stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Id.* at 462.

In this case, the most critical factors to assess are factors 2 (the reaction of the class), 7 (Spotify's ability to withstand a greater judgment), and 8 (the range of reasonableness of the settlement fund in light of the best possible recovery). As a group of over 500 Settlement Class Members, Objectors represent a nontrivial proportion of the class, and their negative reaction can be considered a reaction of the class. With a catalog of 30 million songs, 60 million active subscribers and over \$3 billion in annual revenue,[7] Spotify has the resources to withstand a greater judgment. Finally, a recovery of less than two cents on the dollar for the alleged infringement is patently insufficient and unreasonable.

## COMPLIANCE WITH PARAGRAPH 24 OF THE COURT'S ORDER (DKT. #177)

Each Objector's name, address, telephone number, email, and list of applicable copyright registration numbers are attached hereto as Exhibit A. Neither Donahue Fitzgerald LLP nor Pullman & Comley, LLC have objected to any class action settlement in the previous five years, and are not aware of any Objector doing so.

---

[7] *See supra* at Note 6; *see also* McIntyre, Hugh, "Spotify's Revenue Spiked In 2016 But Its Losses Rose By A Greater Margin," Forbes, June 15, 2017, *available at* https://www.forbes.com/sites/hughmcintyre/2017/06/15/spotify-lost-more-than-600-million-from-3-3-billion-in-revenue-in-2016/#2f9d59647008 (accessed Sept. 9, 2017) ("[T]he popular platform brought in just under \$3.3 billion worldwide.").

## <u>CONCLUSION</u>

For the foregoing reasons, Objectors, and each of them, object to the Proposed Settlement.

Respectfully submitted,

Dated:  September 12, 2017

PULLMAN & COMLEY LLC

By: /s/ James T. Shearin
James T. Shearin, Esq.
Timothy G. Ronan, Esq.
Pullman & Comley, LLC
850 Main Street
Bridgeport, CT  06604
(203) 330-2000
(203) 576-8888 – fax
**jtshearin@pullcom.com**
**tronan@pullcom.com**

DONAHUE FITZGERALD LLP

By: /s/ Daniel J. Schacht
Daniel J. Schacht, Esq.
Andrew S. MacKay, Esq.
Donahue Fitzgerald LLP
1999 Harrison Street, 25th Floor
Oakland, CA  94612-3520
(510) 451-3300 / (510) 451-1527 fax
**dschacht@donahue.com**
**amackay@donahue.com**

Attorneys for Objectors