UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA FERRICK, et al.,<br><br>               Plaintiffs,<br><br>     -against-<br><br>SPOTIFY USA, INC. et al.,<br><br>               Defendants. | 1:16-cv-08412 (AJN)<br><br>**DECLARATION OF RANDALL D. WIXEN IN SUPPORT OF OBJECTION TO SETTLEMENT CLASS MEMBERS' RIGHT OF EXCLUSION** |

I, RANDALL D. WIXEN, declare as follows:

## STATEMENT OF QUALIFICATIONS

1. I have nearly 40 years of experience in music publishing, royalty compliance, copyright management, copyright law, and the music business generally.

2. I am the President/CEO and Founder of Wixen Music Publishing, Inc. ("Wixen"), an independent music publishing company based in Calabasas, California. I formed Wixen in 1979 as an alternative channel for publishing administration, copyright management, and royalty compliance review. In 2010, I formed Wixen Music UK Ltd., an independent music publishing company based in London.

3. I have a BA in Economics from the University of California Los Angeles (1981) and have also completed professional-level courses in law and business.

4. I am the author of *The Plain And Simple Guide To Music Publishing* (Hal Leonard, Milwaukee, WI, 2005, 2nd edition 2009, 3rd edition 2014). I have also written on the topic of publishing royalties for the L.A. County Bar Association, and I have lectured on music business topics and royalty issues at Cal State Northridge, Pepperdine Law School, UC Berkeley School of Law, UCLA Extension, the USC Entertainment Law Symposium, the Association of

Independent Music Publishers, Songwriter Resource Service (predecessor to the National Association of Songwriters), Northeastern University, and the Musicians Institute.

5. My professional memberships/affiliations include: NMPA (best practices committee); The Recording Academy (a 30-year voting member, producers division); the Americana Music Association (board member); Independent Music Publishers Forum (executive board); ASCAP; BMI; SESAC; CMA; California Copyright Conference; and the Association of Independent Music Publishers.

6. I have provided consultation and expert witness testimony in prior cases, including the *Bankruptcy Estate of M.C. Hammer*, *Rupa Marya v. Warner/Chappell Music Inc.* (also known as the "Happy Birthday" case), and *Tiller v. Dorn*.

## OBJECTION TO SETTLEMENT CLASS MEMBERS' RIGHT OF EXCLUSION

7. The Settlement Agreement sets forth that "no person or entity shall purport to exercise any exclusion rights of any other person or entity, or purport to exclude other Settlement Class Members as a group, aggregate, or class involving more than one Settlement Class Member, or as an agent or representative, including for any parents, subsidiaries, or affiliates of the Settlement Class Member submitting the Request for Exclusion." Dkt. # 176-3 Settlement Agreement And Release ("Settlement Agreement" or "Settlement") at 61 ¶ 13.6. This stipulation goes against industry standards and client expectations.

8. It is industry standard for songwriters to engage a music publishing company, such as Wixen, to handle all administrative matters related to their compositions, including, without limitation, pursuing and settling copyright infringement disputes. Furthermore, songwriters generally grant broad rights to music publishers on an exclusive basis and, therefore, anticipate and expect that their publisher will handle all aspects of any copyright infringement

dispute. By way of example, the following language, taken from Wixen's standard administration agreement between itself and its clients, highlights the broad and exclusive rights in and to musical compositions that are typically acquired by music publishing companies:

> You hereby grant to Wixen the sole and exclusive right during the term of this agreement to administer your musical compositions throughout the world in every capacity and aspect of music publishing. Our rights shall include, without limitation, the exclusive right to sign agreements, collect previously unpaid royalties, receive monies, issue licenses, pay royalties, register copyrights, interact on behalf of you and/or your music publishing company with collection, performing and/or mechanical rights societies throughout the territory of the world, and you agree that during the term of this agreement you will not exercise any of these rights yourself or in conjunction with any other person or firm.

9. Requiring our clients, who are mostly songwriters that have very little to no experience handling the administrative minutiae of copyright infringement lawsuits and/or settlements, to directly opt out of the Settlement goes against industry standards and client expectations.

10. Furthermore, of the thousands of Wixen clients who were asked if they wanted to stay in the Settlement Class, only one client requested to stay. The remainder of Wixen's clients, each of whom have exclusively licensed to Wixen the right to handle this matter, including the right to sue Spotify for the rights at issue here, are relying on Wixen's judgment regarding a fair settlement for their claims of copyright infringement against Spotify.

## EXCLUSION REQUIREMENTS – COPYRIGHT REGISTRATION NUMBERS

11. The Settlement Agreement provides that any request for exclusion from the Settlement must include the copyright registration number of each musical composition being

excluded.[1] This requirement places an unreasonable and impractical burden upon the copyright holders.

12. Furthermore, no music service provider that Wixen is aware of, including Spotify, uses copyright registration numbers to track the use of compositions on its service.

13. In practice, copyright registration numbers are typically only necessary in the event of copyright litigation. Copyright registration numbers are not commonly used as identifiers in the normal course of administering and exploiting music publishing copyrights. They are neither required in the registration of a musical work with a performing rights organization or other royalty collection agent, nor are they used to identify the musical composition when a music publishing copyright owner issues a license for the use of a musical composition to a record label, television production company, digital service provider, or any other licensee. Although Wixen maintains records of the copyright registration numbers it has secured, accurate records have not been maintained for many of the compositions currently administered by Wixen because the client and/or their prior copyright administrator(s) have failed to keep track of the copyright registration numbers after many years (sometimes decades) of never using them.

14. Requiring copyright holders to provide these numbers in order to be excluded from the settlement or remunerated for Spotify's infringement means that the copyright holders will have to take on the burden of locating these numbers. The Settlement Agreement also requires Class Members to provide their copyright registration numbers in order to participate in the Settlement Fund. Dkt. # 176-3 (Settlement Agreement) at 23 ¶ 3.2(h)(iii). The outcome of

---

[1] "To be valid, a Request for Exclusion must contain all of the following information: . . . (c) the U.S. copyright registration number (or copyright registration application number) for each copyrighted musical composition owned in whole or in part by the Settlement Class Member." Dkt. No. 176-3 (Settlement Agreement) at 60-61 ¶ 13.4.

requiring copyright registration numbers to both opt out of the Settlement and to participate in the Settlement Fund is that any Class Members who are unable to locate and/or provide their respective copyright registration numbers, due to the time constraints, the costs of doing so, or otherwise, will be bound by the terms of the Settlement yet left with no means to participate in the Settlement Fund. This leaves the affected Class Members with no recourse for Spotify's infringement of their copyrights and results in an unjustified windfall to both Spotify and to those Class Members who do have the means to locate and/or provide their registration numbers. Given the strict time constraints of the Settlement, copyright holders have been afforded insufficient time to locate these numbers. Furthermore, the cost of locating such numbers in many cases will be higher than the amount of remuneration the copyright holder will actually receive under the Settlement.

15. By way of example, Wixen has hired a team of three researchers/data entry specialists on a full-time basis to obtain copyright numbers for its clients' compositions, a significant cost for an independent publisher like Wixen, and has also invested significant resources in creating custom software to aid the process of obtaining and tracking such numbers. Since commencing its comprehensive search, Wixen has only been able to obtain approximately 12,000 copyright registration numbers relevant to the more than 60,000 compositions Wixen represents. Wixen's clients would like to opt out the remaining compositions, approximately 48,000, but the notice period provides insufficient time to do so.

16. Compounding matters, Wixen also represents thousands of pre-1978 compositions. The Copyright Office does not provide the public with a searchable online

database of copyright registrations issued prior to 1978.[2] An owner of a pre-1978 copyright must either (a) travel to the Copyright Office's Public Reading Room in Washington, DC and search through approximately 45 million copyright cards[3] or (b) pay a minimum fee of $400 per work to the Copyright Office for a Copyright Office employee to research the musical composition[4]; even then, the Copyright Office will not warrant that its findings are conclusive.[5]

17. Finally, the Settlement itself does not identify which copyright registration number is required to be identified. Considering that there are frequently multiple copyright registration numbers for a single musical composition (e.g. an initial term registration, a renewal term registration, and any musical arrangements), this creates ambiguity as to which copyright registration number should be included on a Request for Exclusion and raises questions about whether a renewal registration number alone, for example, is sufficient to exclude a musical composition from the Settlement.

## CONCLUSION

18. In conclusion, I respectfully ask the Court to consider the foregoing and (a) recognize that it is standard and often expected in the music industry for music publishing

---

[2] See Copyright Office, Public Catalog, available at http://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First (accessed July 14, 2017) ("Works registered prior to 1978 may be found only in the Copyright Public Records Reading Room.").

[3] See "The Copyright Card Catalog and the Online Files of the Copyright Office," U.S. Copyright Office Circular 23, available at https://www.copyright.gov/circs/circ23.pdf, at 1 (accessed July 14, 2017) ("The copyright card catalog is located in the Copyright Public Records Reading Room (LM-404) on the fourth floor of the James Madison Memorial Building of the Library of Congress . . . [and it] contains approximately 45 million cards covering the period 1870 through 1977.").

[4] See "Copyright Office Fees," U.S. Copyright Office Circular 4, available at https://www.copyright.gov/circs/circ23.pdf, at 2 (accessed September 11, 2017) ($200 hourly fee to search Copyright Office records, with a two-hour minimum).

[5] See "How to Investigate the Copyright Status of a Work," U.S. Copyright Office Circular 22, available at https://www.copyright.gov/circs/circ22.pdf, at 3 (accessed 14 Jul. 2017) ("Searches of the Copyright Office catalogs and records are useful in helping to determine the copyright status of a work, but they cannot be regarded as conclusive in all cases.")

administrators to settle copyright infringement disputes on behalf of its clients, (b) recognize the practical and financial burdens of identifying each musical composition solely by its copyright registration number, especially given the time constraints, and (c) offer relief from the copyright registration number requirement by also allowing Settlement Class Members to identify their musical compositions via other customary industry methods, including by their International Standard Work Code (ISWC), by the unique identifier assigned to the composition by performing rights organizations or other royalty agents (e.g., ASCAP, BMI, SESAC, GMR, and HFA), by International Standard Recording Code (ISRC), by Spotify's internal recording identification numbers, or, if such identifiers are not available, by the title of the musical composition together with the names of its writer(s) and publisher(s).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of September, 2017, at Calabasas, California.

_____
RANDALL D. WIXEN