# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| **MELISSA FERRICK, et al.** | ) | **No. 1:16-cv-08412 (AJN)** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **SPOTIFY USA INC., et al.,** | ) | |
| **Defendants.** | ) | |
| | ) | |

## JOINT REPLY OF KRISTIN DIABLE AND TAMARA DEARING
## TO PLAINTIFFS' MOTIONS FOR ATTORNEYS' FEES

George W. Cochran, Esq.
(Pro Hac Vice motion pending)
LAW OFFICE OF GEORGE W. COCHRAN
1385 Russell Drive
Streetsboro, Ohio 44241
Phone: (330) 607-2187
Fax:     (330) 230-6136
Email: lawchrist@gmail.com

*Attorney for Objectors Kristin Diable and Tamara Dearing*

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES ....................................................................................... ii

SUMMARY OF ARGUMENT ....................................................................................1

ARGUMENT.............................................................................................................4

I. A proper application of the *Goldberger* factors leaves little doubt that awarding 40% of the Settlement's monetary funds to attorneys is excessive……………………………………4

    A. The risk actually assumed by Class Counsel does not warrant exceeding the normal range for percentage fee awards in settlements of this size………………………………..5

    B. The minimal time and labor expended by Class Counsel on dispositive issues confirms that settlement was in mind from the beginning…………………………………………6

    C. Neither do the results achieved justify exceeding the normal range for percentage fee awards…………………………………………………………………………..8

    D. The promise of future benefits which are either contingent or speculative in nature should not receive full credit in Plaintiffs' fee calculation....................................................10

II. A crosscheck of Class Counsel's lodestar dramatizes the unreasonableness of Plaintiffs' motion…………………………………………………………………………………12

III. The failure to disclose Class Counsel's fee allocation agreement violates F.R.C.P. 23(h) and Local Rule 23.1……………………………………………………………………13

IV. The proposed incentive awards to class plaintiffs are also excessive…………………………14

V. As non-class counsel, Michelson & Robinson lacks legal and factual support for claiming all the hours they dedicated to this action……………………………………………………15

CONCLUSION ..................................................................................................……16

# TABLE OF AUTHORITIES

Cases

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2008 WL 4128702 (S.D.N.Y. Sept. 3, 2008)………………………………………………………15

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226 (2d Cir.1987)………………………..12

*In re AOL*, 2007 WL 3145111………………………………………………………14

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir.2013)………………………………11

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)………………….………………...6

*Bluewater Music Services Corp. v Spotify U.S.A., Inc.*, 3:17-cv-01051 (M.D. Tenn. 2017)………………………………………………………………………………9,10

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)……………..4

*In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir.2005)………………………………………15

*In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371 (S.D.N.Y. Dec. 19, 2013)……………….....2,12

*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005)………………..……………...12

*In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143 (3d Cir. 2005)……………………………14

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D.Ga.1993)………………..…….3

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013)…………………………………………2

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)………………………..……………………11

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2:13-cv-05693-PSG-GJS (CD Cal. 2013)………..7

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir.2000)……………..…….4,5,12

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhousecoopers, L.L.P.*, 212 F.R.D. 400 (E.D.Wis.2002)………………………………………………………………………3

*Gulino v. Symbol Techs., Inc.*, No. 06 CV 2810 (JG) (AKT), 2007 WL 3036890 (E.D.N.Y. Oct. 17, 2007)……………………………………………………………………14

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008)………..13

*In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)……………………………………………………………..……4

*In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010)......................................2,13

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (S.D.N.Y. 2008)....13

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546,
106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)…………………………………………………12

*In re Philip Servs. Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 101427 (SDNY 2007)…………..4

*In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998)………………..8

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993)……………………….2

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014)…………………………………...8

*Roberts v. Texaco, Inc.*, 979 F.Supp. 185 (S.D.N.Y. 1997)…………………………………15

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir.1999)…………………………………...4

*Stewart v. USA Tank Sales & Erection Co.*, No. 12-05136, 2014 WL 836212
(W.D. Mo. Mar. 4, 2014)………………………...…………………………………11

*In re Visa Check/MasterMoney Antitrust Litig.*, No. 96 Civ. 5283, 2004 U.S. Dist.
LEXIS 8729 (E.D.N.Y. Apr. 27, 2004)…………………………...………...3,12

*Wal-Mart Stores, Inc. v Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir.2005)………………...….…4,12

*White v. Auerbach*, 500 F.2d 822 (2d Cir. 1974)…………………………………………..3

<u>Rules and Statutes</u>

Fed. R. Civ. P. 23(h) ................................................................................1,8,11,13

Local Rule 23.1……………………………………………………………………1,14

<u>Other Authorities</u>

Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71 (2015)…14

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, FOURTH (2004)...8,11,14

Fitzpatrick, Brian
*An Empirical Study of Class Action Settlements and Their Fee Awards*,
7 J. EMPIRICAL L. STUD. 811 (2010)…………………………………………………5

# SUMMARY OF ARGUMENT

Because class members Kristin Diable and Tamara Dearing ("Objectors") direct their reply to Class Counsel's fee motion only, the deadline set by this Court for objecting to the ***settlement*** is of no consequence.[1] A proper application of the *Goldberger* factors leaves little doubt that awarding 40% of the Settlement's monetary funds to attorneys is excessive. The risk actually assumed by class counsel does not warrant exceeding the normal range for percentage fee awards in settlements of this size. The time and labor expended by Class Counsel on dispositive issues confirms that settlement was in mind from the beginning. Neither do the results justify exceeding the normal range for percentage awards. A promise of contingent or speculative future benefits should not receive full credit in Plaintiffs' fee calculation. A crosscheck of Class Counsel's lodestar dramatizes the unreasonableness of Plaintiffs' motion. The failure to disclose co-counsel's fee allocation agreement violates F.R.C.P. 23(h) and Local Rule 23.1. The proposed incentive awards to class plaintiffs are also excessive. As non-class counsel, Michelson & Robinson lacks legal and factual support for claiming all the hours they dedicated to this action. For all of the foregoing reasons, Objectors respectfully ask the Court to award no more than 22% of the Settlement Fund to Class Counsel ($9,559,000) and no more than 1% of the Settlement Fund to Michelson & Robinson ($434,500), for a total fee award of 23% of the Settlement Fund ($9,993,500). Class counsel should also be ordered to disclose their fee allocation agreement. Finally, Objectors believe class plaintiffs deserve no more than $10,000 each as incentive awards for their contribution to the settlement.

---

[1] Objections to the settlement must have been postmarked by Sept. 12, 2017 (Class Notice, ¶ 19). Class Counsel's claim for fees is treated separately (Agreement, ¶ 15.1). Replies to the fee motions must be filed at least seven days before the fairness hearing (Ord. Prelim. Approving Settlement, ¶ 21). To aid the Court, counsel for Objectors requests permission to attend the fairness hearing.

# INTRODUCTION

A district court must act as a "fiduciary for the class [] with a jealous regard" for the rights and interests of absent class members. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010). The fiduciary role is necessary because "[i]n class-action settlements, the adversarial process—or [] 'hard fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). "The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). "[T]here is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own". *Pampers*, 724 F.3d at 715. Encompassed within this fiduciary duty is "the Court's responsibility to avoid awarding plaintiffs' counsel a 'windfall' at the expense of the class—a special concern where 'the recovered fund runs into the multi-millions.'" *In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 374 (S.D.N.Y. Dec. 19, 2013).

Such concerns drive this joint reply to Plaintiffs' motions for attorneys' fees. Objector Tamara Dearing **(**3055 University Rd**.,** Louisville, KY 40206; (502) 295-0107; tamaradearing@ hotmail.com) is a member of the Settlement Class by virtue of registering a composition of songs in her album entitled "Yesterconfessions" with the U.S. Copyright Office (Reg. No. SR0000382848) that was subsequently streamed by Spotify during the class period without paying Dearing a licensing fee. Objector Kristin Diable **(**3109 General Taylor St., New Orleans, LA 70125-4615; 917-202-2139; kristindiable@gmail.com) is a member of the Settlement Class by virtue of registering the song "Accidents" in her album entitled Shelter with the U.S. Copyright Office (Reg. No. SR0000375529) that was subsequently streamed by Spotify during the class period without paying Diable a licensing fee. Dearing and Diable (collectively "Objectors") have retained competent counsel to articulate the factual and legal grounds for their joint objection to the competing fee motions. Attorney George W. Cochran has vast experience representing objecting class members to national class settlements. To the best of his recollection,

Cochran has advocated 17 objections over the last five years.[2]

It is well settled that objectors play a valuable role in preventing collusive or otherwise unfavorable settlements. *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974). They also enhance the adversarial process by generating debate about issues relating to the proposed settlement which otherwise would not have been discussed. *Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhousecoopers, L.L.P.,* 212 F.R.D. 400, 413 (E.D.Wis.2002); *In re Visa Check/MasterMoney Antitrust Litig.*, No. 96 Civ. 5283, 2004 U.S. Dist. LEXIS 8729, at *5 (E.D.N.Y. Apr. 27, 2004); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 359 (N.D.Ga.1993) (awarding fees to objectors who "significantly refined the issues germane to a consideration of the fairness of this complex settlement and [] transformed the settlement hearing into a truly adversarial proceeding"). To that end, attorney Cochran's specialized knowledge and experience lends further weight to the merits of Objectors' concerns about the reasonableness of counsels' fee requests.

## ARGUMENT

**I.    A proper application of the *Goldberger* factors leaves little doubt that awarding 40% of the Settlement's total monetary funds to attorneys is excessive.**

It has long been settled that an attorney who creates a common fund for class members is entitled to share in the recovery. See *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). However, the ***amount*** of "fees awarded in common fund cases [must] not

---

[2] They include *Mehigan v. Ascena Retail Group*, No. 15-00724 (E.D. Pa.), dismissed on appeal; *Perkins v. LinkedIn Corp.,* No. 13-04303 (N.D. Cal.), dismissed on appeal; *In re Auto. Parts Antitrust Litig.,* No. 12-md-02311 (E.D. Mich.), dismissed on appeal; *Golloher v. Todd Christopher Int'l,* No. 12-06002 (N.D. Cal.), dismissed on appeal; *Pappas v. Naked Juice Company of Glendora Inc,* et al, No. 11-08276 (C.D. Cal.), dismissed on appeal; *In re Nat'l Football League Players' Concussion Inj. Litig.,* 12-md-02323 (E.D. Pa.) affirmed on appeal; *In re Toyota Motor Corp. Unintended Acceleration Mktng. Sales Prac. and Prods. Liab. Litig.,* No. 10-ML-02151 (C.D. Cal.) dismissed on appeal; *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 07-md-01827 (N.D. Cal.), dismissed on appeal; *In Re Cathode Ray Tube (CRT) Litig.,* No. 3:07-5944 (N.D. Cal.), appeal pending; *Ebarle v. LifeLock, Inc.,* No. 3:15-cv-258-HSG (N.D. Cal.), dismissed on appeal ; *Indirect Plaintiff Class, et al v. LG Display Co., Ltd., et al.* (N.D. Cal.), No. 3:07-md-01827-SI, dismissed on appeal; *The Indirect Purchaser Settlement, et al v. Samsung Electronics Company Lt, et al.,* No. 4:02-md-01486-PJH (N.D. Cal.), dismissed on appeal; *In re Capital One Telephone Consumer Protection Act Litigation,* No. 1:12-cv-10064 (N.D. Ill.), dismissed on appeal; and *Alexia Keil, et al. v. Blue Buffalo Company, Ltd,* No. 4:14 MD 2562 RWS (E.D. Mo.), affirmed on appeal; *Takata Airbag Products Liability, No.* 14-24009-cv–MORENO (S.D. Fla.), in process of appeal.

exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 47 (2d Cir.2000). While the lodestar method serves a valuable purpose as a crosscheck, the percentage approach is better suited for tying fees to the benefits achieved. Id. at 50; *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir.1999); *Wal-Mart Stores*, *Inc. v Visa U.S.A., Inc.*, 396 F.3d 96, 120-21 (2d Cir.2005). To avoid favoring counsel over the class however, the percentage selected must be ***inversely related*** to the settlement's size. *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003). The Second Circuit has explicitly warned that rote application of the popular 25% benchmark "could easily lead to routine windfalls where the recovered fund runs into the multi-millions." *Goldberger,* 209 F.3d at 52. In cases with recoveries between $50 and $75 million, courts have instead awarded fees in the range of 12% to 20%.[3]  This Court specifically endorsed the sliding scale principle in *In re Philip Servs. Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 101427 (SDNY 2007).

Because a thorough fee analysis requires scrutinizing the unique circumstances of each case, such comparisons have limited value. *Goldberger,* 209 F.3d at 53. Though Class Counsel has cherry-picked other percentage awards that exceed their own request, empirical research classifies such cases as outliers. Regardless of the method employed, six factors must be addressed to gauge the reasonableness of any motion: (1) time and labor expended; (2) magnitude

---

[3] S*ee, e.g.,  In re Twinlab Corp. Sec. Litig.,* 187 F.Supp.2d 80, 88 (E.D.N.Y.2002) (12% of $26,500,000); *In re Dreyfus Aggressive Growth Mut. Fund Litig.,* No. 98 Civ. 4318, 2001 WL 709262, at *7 (S.D.N.Y. June 22, 2001) (15% of $18,500,000); *In re Fine Host Corp. Sec. Litig.,* No. MDL 1241, 2000 WL 33116538, at *6 (D.Conn. Nov. 8, 2000) (17.5% of $17,750,000); *Varljen v. H.J. Meyers & Co., Inc.,* No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (20% of $5,000,000); *In re Health Mgmt. Sec. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000) (20% of $4,500,000); *In re Bear Stearns*, 909 F.Supp.2d at 272 ("The requested fee is only 12% of the Settlement Amount, well below the 17%-25% typically awarded"); *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ.1510, 2007 WL 2743675, at *16 (E.D.N.Y. Sept. 18, 2007) ("Since Goldberger, courts in the Second Circuit have tended to award attorneys' fees in amounts considerably less than 30% of common funds"); *In re Arakis Energy Corp. Sec. Litig.,* No. 95 CV 3431, 2001 WL 1590512, at *9 (E.D.N.Y. Oct. 31, 2001) ("[T]he trend within this circuit after *Goldberger* has been to award attorney's fees in amounts considerably less than 30% of common funds in securities class actions, even where there is a substantial contingency risk." )

and complexities of litigation; (3) risk of loss; (4) quality of representation; (5) fee's proportion to settlement; and (6) policy considerations. *Goldberger*, 209 F.3d at 50. As demonstrated below, several of these factors weigh against granting the pending fee motions.[4]

### A. The risk actually assumed by Class Counsel does not warrant exceeding the normal range for percentage fee awards in settlements of this size.

"The first, and most important [] factor is the risk in pursuing the case." *Bristol-Myers*, 361 F. Supp. 2d at 233 (*citing Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000). Despite Plaintiffs' hyperbole about the risks associated with this litigation, their decision clearly came on the heels of Spotify's highly publicized negotiations with the National Music Publishers' Association ("NMPA") culminating in a landmark agreement that granted royalties for compositions tainted with uncertain ownership.[5] Like many other online streaming services, Spotify hired the Harry Fox Agency ("HFA") to issue mechanical licenses for the 45,000 publishers it represents. A controversy arose after learning that HFA's inability to match streamed songs with copyright holders could forfeit countless royalties from Spotify's 40-million song data base. A race to the courthouse immediately ensued.

Plaintiffs were not the first to bring this innovative copyright claim to the Central District of California. David Lowery, well-known singer and songwriter, spent considerable time figuring out what type of redress to seek and on whose behalf. Lowery and his personal attorney sought referrals, spoke with industry participants, and conducted law firm interviews before finally selecting Michelman & Robinson ("M&R") as class counsel.[6] According to M&R's fee motion:

> Upon being engaged by Lowery, M&R began an intense and extensive investigation into the novel claims at issue. As a direct result of this intense pre-litigation investigation, in December 2015, in the Central District of California, M&R brought an action against Spotify on behalf of David Lowery and the class members alleging copyright infringement ("Lowery action"). This was the very first class action of its kind in the United States. Indeed, ***M&R was the first to file a class action litigation against an interactive streaming service for the willful infringement of mechanical copyrights under the Copyright Act***—an act made

---

[4] Objectors will address Michelman & Robinson's ("M&R's") motion after analyzing Class Counsel's motion.

[5] In fact, Plaintiffs' expert relied on NMPA's settlement amount to calculate future benefits. (DE 269, 7).

[6] Lowery claims Gradstein & Marzano, co-lead counsel in the present case, was among those interviewed and rejected.

possible only after spending substantial time conducting an intense pre-litigation investigation to develop the novel claims. This is evidenced by the fact that on January 8, 2016, less than two weeks after M&R filed the complaint in the Lowery class action lawsuit against Spotify—an event which was highly publicized within the music industry—***Gradstein & Marzano, P.C. ("Gradstein") filed a substantively identical class action lawsuit*** against Spotify on behalf of songwriter Melissa Ferrick ("Ferrick action"). The lawsuit was filed in the same District Court, alleged the same copyright infringement claim, and also sought monetary damages and injunctive relief. In other words, ***it was a copycat complaint.*** That complaint was only possible due to the groundbreaking work performed by M&R. (emphasis added)

Spotify's early initiative to control its exposure through a creative "opt in" proposal to the NMPA indicates that a future class-wide settlement via private litigation already loomed large in its mind.

**B. The minimal time and labor expended by Class Counsel on dispositive issues confirms that settlement was in mind from the beginning.**

That the parties intended to resolve their dispute through a negotiated settlement instead of trial by jury is reflected in the litigation's brief lifespan—less than ***18 months*** from start to finish. Plaintiffs' attempt to fortify their role with a laundry list of accomplishments is form over substance. As previously noted, much of the pre-suit investigation was actually performed by M&R. Next in line was a fierce competition between the opposing firms for lead chair. A quick glance at the docket reveals that pretrial activity consisted of little more than a successful motion to transfer venue to New York in October 2016. Spotify's pending motion to dismiss for lack of personal jurisdiction would never be revived. Instead, responsive pleadings were put on hold and Spotify's motion to strike class allegations was stayed until spring of 2017. It would not be adjudicated. Mediation began before Rule 26 disclosures were even exchanged. In May 2017, the parties sought preliminary approval of a settlement agreement reached the same day.

Plaintiffs try hard to offset this sketchy record by appealing to an extraneous doctrine. Citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013), they say Class Counsel should not be "penalized for achieving an earlier settlement, particular[ly] where, as here, the settlement amount is substantial." (Motion at 9). However, this narrow principle is actually aimed at justifying

a high lodestar multiplier when class counsel achieves ***superlative results*** in short order. See, e.g. *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999). As set forth later in Objectors' reply, *Spotify* does not qualify for this exception.

A better gauge of Class Counsel's efforts is supplied by a similar class action recently settled by the same firms in the Central District of California. See *Flo & Eddie, Inc. v. Sirius XM Radio, Inc*., 2:13-cv-05693-PSG-GJS (CD Cal. 2013). Plaintiffs claimed Sirius XM was exploiting certain audio recordings made before 1972 through its satellite and internet radio service. After conducting discovery on liability, Plaintiffs moved for summary judgment on all causes of action. In September 2014, the Court granted summary judgment in favor of Plaintiffs on all counts. (Prior to this ruling, no court had ever expressly recognized such a right.) After another round of extensive discovery, Plaintiffs moved to certify the class. The Court granted the motion in May 2015. Just two weeks later, Sirius XM agreed to pay five major record companies $210 million to settle a separate lawsuit asserting similar claims. In September 2015, the Court granted Defendant's motion for summary judgment on Plaintiffs' unfair competition claim and request for punitive damages. Finally, a jury trial on damages was set for November 15, 2016. After more than three years of arduous and contentious litigation (followed by extensive arms-length negotiations), the parties reached a settlement just ***48 hours*** before jury selection. Upon granting Plaintiffs' fee motion, the Court applauded class counsel's efforts:

> This procedural summary presents merely a snapshot of the intense discovery and motion practice that has characterized the litigation of this case, which has included, inter alia, voluminous pleadings, motions for summary judgment, certification and decertification briefings, ex parte applications, motions for reconsideration, motions to compel, and requests to stay the case pending resolution of various appeals, as well as extensive liability and damages discovery involving tens of thousands of documents and more than 35 depositions of fact and expert witnesses. Mot. 3–6. In addition, the parties prepared for trial, thereby litigating 18 motions in limine, designating deposition testimony from 23 witnesses, and preparing witness lists, exhibit lists, jury instructions and other pre-trial filings. (DE 694 at *2)

By the time a truce was declared, class counsel had lodged 15,287 billable hours toward an $8.7 million lodestar (more than **four times** that logged in the present case). This glowing report of counsel's fierce battle with Sirius provides a fitting contrast to Spotify's conciliatory tone.

### C. Neither do the results achieved justify exceeding the normal range for percentage fee awards.

Class Counsel's lack of intensity is reflected in the suit's lackluster results. The "fundamental focus" in awarding fees under Rule 23(h) "is on the result actually achieved for class members." Notes of Advisory Committee on 2003 Amendments to Rule 23(h); accord *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) ("[I]n determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation."). In accordance with Rule 23's focus, "numerous courts have concluded that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed." *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 338 (3d Cir. 1998) (quoting Conte, 1 *Attorney Fee Awards* § 2.05, at 37). See also *ALI Principles* § 3.13; Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, FOURTH (2004), § 21.71 ("the fee awards should be based only on the benefits *actually delivered*").

 Once again, class counsel falls short. In *Sirius XM*, class members accounted for only 15% of the 11,808,927 plays of pre-1972 sound recordings. Nonetheless, Plaintiffs were able to secure a guaranteed $25.5 million common fund for past damages, an additional $10 million (pending two related state actions) and 3.5% in future royalties for ten years. Since there were only about 330 members of the class, each copyright holder is assured of a substantial payment. Even the per play award ($15.68 to $21.95) quadruples Spotify's result. Small wonder the Court acknowledged the *Sirius XM* settlement "provides a significant benefit to the class members who will receive monetary payments that Plaintiffs' counsel believes **exceed the amount that could have been achieved at trial**, especially considering the agreement's Royalty Program which, unlike damages obtained at trial, will provide class members with cash payments based on Defendant's future gross

revenue for a period of 10 years." (emphasis added) (Id. at *6).  Because Class Counsel faced substantial legal and procedural obstacles over 3½ years of intense litigation before prevailing on liability and certification in a case of first impression, the Court had no problem exceeding the Ninth Circuit's 25% benchmark by awarding fees equal to 30% of the resulting common fund. (Id. at *11).

The same cannot be said of *Spotify*. On July 18, 2017, two companion lawsuits were filed in Nashville that assert similar claims against the Swedish giant.[7] Spearheaded by attorney Richard Busch, the suits involve several thousand compositions that could easily translate into hundreds of millions in damages. One plaintiff claims that "anything less than the maximum $150,000 statutory damage award for each of the Infringed Works involved herein would encourage infringement, amount to a slap on the wrist, and reward a multibillion dollar company, about to go public, that rules the streaming market through a pattern of willful infringement on a staggering scale." See *Bluewater Music Services Corp. v Spotify U.S.A., Inc.,* 3:17-cv-01051 (M.D. Tenn. 2017) (DE 1 at 3). Given that Spotify circulated 35 billion unpaid streams between 2011 and 2016, Bluewater believes previous settlements have done little "to resolve the outstanding issues with the Spotify licensing and royalty payment system." (Id. at 14). When it comes to our own settlement, Bluewater doesn't mince words:

> [Ferrick's settlement] is also woefully insufficient to pay songwriters and publishers for the infringement by Spotify. Upon information and belief, there are over 100,000 unique individuals who meet the criteria to be in the class with an interest in approximately 8,000,000 compositions. Upon information and belief, the class attorneys will be taking approximately 25% of the settlement payout, which leaves, approximately, a mere thirty-two million dollars ($32,000,000.00) to be divided between the composition owners. Averaging the payout for each owner, Spotify will be allowed to walk away after paying approximately four dollars ($4.00) per infringed composition. Such a settlement is essentially an empty gesture that encourages infringement and is entirely insufficient to remedy years of illegal activity.

---

[7] A widely anticipated IPO is expected to value the fast-growing company at $13 billion.

(Id. at 15). Given the disparity of class counsel's contribution between *Sirius XM* and *Spotify*—as well as public perception regarding the latter's shortcomings—there is no objective basis for exceeding the 25% benchmark for common fund settlements of this size.

### D. The promise of future benefits which are either contingent or speculative in nature should not receive full credit in Plaintiffs' fee calculation.

Peppered throughout Plaintiffs' motion are strategic references to the Settlement's "total financial value" of $112.5 million (consisting of present and future economic and non-economic benefits). Apart from the Settlement Fund, administrative costs and additional attorneys' fees, the biggest ticket item are future royalties projected at $63.1 million. Plaintiffs' expert paints a glowing picture of the Future Royalty Payments Program—where every possible royalty is paid to every potential claimant. That Class Counsel's special fee for these benefits is capped at $5 million, however, betrays Plaintiffs' confidence in this "hard" number. And for good reason: their expert makes innumerable assumptions about key factors that muddies the predictive waters in his methodology. (DE 269). He also fails to account for the historic 10% participation rate reported on class action claims.[8] Because songwriters must overcome several hurdles to receive a royalty (DE 167-3, ¶¶ 1.59-1.61, 3.2, 4.1), this principle may greatly affect the Settlement Class. The final participation rate may not be known for years, however, since the claims deadline comes eight months after all appeals are exhausted (DE 167-3, ¶¶ 1.16, 1.20, 1.46, 1.6). In the meantime, every variable that veers from reality nudges the risk of an inflated fee award upward.

In light of Rule 23's directive, any percentage award should be tied to the amount ***actually paid*** for the class' benefit. Alternatively, the Court could make a partial award based on available funds and defer further judgment until additional funds are collected.[9] See Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."). As one court explained:

---

[8] See, e.g., *Bayat*, 2015 U.S. Dist. LEXIS 50416 at *5-6 (2% claims rate); *Evans v. Linden Research Inc.*, No. C-11-1078 DMR, 2014 U.S. Dist. LEXIS 59432 at *4 (N.D. Cal. April 29, 2014) (4.3% claims rate); *Pollard v. Remington Arms Company LLC*, Case No. 4:13-cv-00086 (W.D. Mo. March 14, 2017) (0.29% claims rate).
[9] For example, Class Counsel's 30% fee in *Sirius XM* is not paid until the benefits are actually received.

The Court is [] reluctant to approve any settlement which allows counsel to receive 100% of their fees before the settlement process is completed. Holding back a percentage of the attorney fee award until all class members have received their settlement checks gives class counsel a financial incentive to monitor the settlement process and quickly respond to any client concerns.

*Stewart v. USA Tank Sales & Erection Co.*, No. 12-05136, 2014 WL 836212, at *8 (W.D. Mo. Mar. 4, 2014). Thus, "evaluating a fee award [] should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process [which] may require it to 'delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is complete.'" *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 (3d Cir.2013) (quoting MANUAL FOR COMPLEX LITIG., FOURTH, § 21.71). The Southern District of New York follows this growing trend. See *In re Giant Interactive Group, Inc. Secs. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) (half of fee held in abeyance pending report on progress of claims administration process).

In the present case, class counsel seeks full payment for the following contingent monetary and non-monetary benefits: (1) future royalties on properly documented claims; (2) submission of claims online; (3) assistance with identifying "unmatched tracks"; (4) an audit procedure to verify accuracy; and (5) other tools for mechanical licensing. For the reasons discussed above, Plaintiffs should not receive full credit for any benefit that may decline in value or never materialize. Otherwise, Class Counsel run the risk of violating an important fiduciary duty owed to clients by paying themselves years before class members recover their full share. *See Pampers*, 724 F.3d at 718; *Eubank v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014) (settlement provision allowing payment of portion of attorneys' fees before class claims were paid was "suspicious"). In light of these legal and ethical considerations, the Court should tailor a concrete fee award to concrete benefits.

## II. A crosscheck of Class Counsel's lodestar dramatizes the unreasonableness of Plaintiffs' motions.

While the simplicity of a percentage award is appealing, the Court must also examine class counsel's lodestar to ensure the fee is reasonable. See *Goldberger*, 209 F.3d at 50 ("[W]e

encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage.); see also *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp. 2d. 503 520-21 (E.D.N.Y. 2003). The lodestar method multiplies the number of hours reasonably expended by a reasonable hourly rate for attorneys of similar skill within a given geographic location. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). "Courts in their discretion may increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys." *Wal-Mart Stores*, 396 F.3d at 120-21 ("The multiplier takes into account the realities of a legal practice by rewarding counsel for those successful cases in which the probability of success was slight and yet the time invested in the case was substantial."). Accord *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 226, 236 (2d Cir.1987) (citations omitted).

Class counsel's lodestar in the present case seriously undermines their fee motion. For starters, several factors dictate a reduction in compensable time. These include: (1) time spent competing with M&R for lead counsel; (2) time spent pursuing discovery after launching settlement negotiations; (3) disproportionate ratio of partner to associate hours; (4) charging partner rates for contract attorneys (if any); and (5) inefficiency between law firms. See, e.g. *In re Citigroup Inc. Securities Litigation*, 965 F.Supp.2d 369 (S.D.N.Y. 2013); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005). In *Denney*, the presence of just *one* factor (disproportionate partner time) caused the court to reject a *2.04* multiplier. Its reasoning?

> To permit a fee award amounting to 2.04 times this inflated lodestar would be a disservice to the plaintiff class. Indeed, one would be hard pressed to conclude that Class Members would agree to compensate the majority of the work performed at $1,074 per hour, which is what a 2.04 multiplier would do. I therefore conclude that a multiplier of 1.5 is more appropriate under the circumstances. Applying this figure to the lodestar figure results in an attorneys' fee award of $11,985,965, which is approximately 15% of the Settlement.

Id. at 353. Even without adjusting the lodestar, Class Counsel's request for *$15.86 million* of the Settlement Fund produces an exorbitant (*7.31*) multiplier with little justification. This alone "bucks the trend among courts after Goldberger refusing to award fees that equate to more than

twice counsels' lodestar*". In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124, 143 (S.D.N.Y. 2008). What is especially perplexing is that the same firms lodged 15,287 hours in the *Sirius XM* litigation (**four times** that of *Spotify*) before accumulating an $8.7 million lodestar. The resulting fee award reflects multipliers ranging from negative .87 (representing the lowest settlement value) to 2.5 (the highest settlement value). When the lodestars from both settlements are converted to hourly fees, the difference becomes striking: *Sirius XM* will pay $500-$1,433 per hour; *Spotify* will pay **$4,563** per hour. Thus, Plaintiffs' request flies in the face of past concerns about paying over $1,000 an hour for such services. See, e.g. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. at 143. No matter how you slice it, there is no way to justify such an outrageous premium.

### III. The failure to disclose Class Counsel's fee allocation agreement violates F.R.C.P. 23(h) and Local Rule 23.1.

Knowing how co-lead counsel intend to split the fee award would also aid the Court's analysis. Rule 23(h) requires the district court to set and allocate the fee award. Consequently, it would be legal error to delegate the allocation to Class Counsel or to any non-judicial third party. *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 229 (5th Cir. 2008).

> It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because "counsel have inherent conflicts." As Judge Ambro noted, "They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?

Id. at 234-35 (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring)). Such an extra-judicial division of the award would undermine Rule 23(h)'s policy of "ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested information to evaluate the reasonableness of a proposed fee." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). That

the Southern District of New York follows this requirement is evident in its local rules. Local Rule 23.1 provides, in pertinent part, that a class notice:

> . . . shall include a statement of the names and addresses of the applicants for such fees and the amounts requested respectively and **shall disclose any fee sharing agreements with anyone**. Where the Court directs notice of a hearing upon a proposed voluntary dismissal or settlement of a class action or a derivative action, the above information as to the applications shall be included in the notice. (emphasis added)

Finally, public policy favors the public disclosure of these fee arrangements. If one firm secretly agrees to accept a lower amount or percentage of its lodestar, the benefit should inure to the *class*—not to other lawyers. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) (givebacks to parties instead of class is a sign of impermissible self-dealing because "there is no apparent reason the class should not benefit from the excess allotted for fees"). Even if the arrangement is otherwise legitimate, the reasons should be tested in court. Cf. MANUAL FOR COMPLEX LITIG., FOURTH, § 14.11 at 186; see also generally Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71 (2015) (illuminating repeat-player phenomenon and concluding that fees should be allocated "through a transparent process, not through the backdoor of settlement").

### IV. The proposed incentive awards to class plaintiffs are also excessive.

The bold spirit behind Class Counsel's fee motion spills over to Plaintiffs. "Incentive awards are not uncommon in class action cases and are within the discretion of the court." *In re AOL Time Warner ERISA Litig.,* No. 02 CV. 8853 (SWK), 2007 WL 3145111, at *2 (S.D.N.Y. Oct. 26, 2007) (citation omitted). "Although payments can be made to compensate named plaintiffs for hardships caused by the action, class representatives are fiduciaries of the absent class members, and are expected to endure the ordinary inconveniences of litigation without special compensation." *Gulino v. Symbol Techs., Inc.*, No. 06 CV 2810 (JG) (AKT), 2007 WL 3036890, at *3 (E.D.N.Y. Oct. 17, 2007). Instead, courts "look for the existence of 'special circumstances'" in determining whether and how much to award class representatives. Id.; see also *Roberts v.*

*Texaco, Inc.*, 979 F.Supp. 185, 201 (S.D.N.Y. 1997) ("[W]hen it comes to incentive awards, the inquiry is whether there are present special circumstances warranting grant of an award."). Courts often consider the following factors in assessing requests for incentive awards: (1) personal risk in becoming and continuing as a litigant, (2) time and effort assisting counsel, (3) factual expertise, (4) size of class recovery, and (5) any special circumstances. *Roberts v. Texaco, Inc.*, 979 F.Supp. at 200. In addition, "courts often [] compare the named plaintiff's requested award to each class member's estimated pro rata share of the monetary judgment or settlement." *In re AOL*, 2007 WL 3145111, at *2 (collecting cases).

None of the foregoing factors justifies paying ***$25,000*** to each named plaintiff in the *Spotify* litigation. There was little personal risk, minimal time commitment, and scant specialized knowledge. Even if some factors are present, no real justification is offered for awarding these clients more than double the award normally granted. Finally, this steep award ***dwarfs*** the net compensation available to unnamed class members—a meager $4 per infringed composition. Such a wide discrepancy raises the specter of a conflict that implicates Plaintiffs' ability to adequately represent the class.

## V.    As non-class counsel, Michelson & Robinson lacks legal and factual support for claiming all the hours they dedicated to this action.

That the law firm initiating this litigation performed work before and after losing the competition for lead counsel presents the final challenge. Michelson & Robinson has filed a separate motion for attorneys' fees equal to 8.5% of the Settlement Fund. When combined with Class Counsel's motion, requested fees consume 40% of the Settlement's total monetary funds. In order to receive compensation for such work, however, M&R must prove they conferred a ***substantial benefit*** on the class. *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2008 WL 4128702, at *3 (S.D.N.Y. Sept. 3, 2008) (citing *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 195 (3d Cir.2005)). While M&R did not meet this burden with respect to all hours submitted, Objectors believe the risk undertaken in leading the charge—along with M&R's

investigative efforts—should be reasonably compensated without pushing total fees to an excessive level.

## CONCLUSION

For all of the foregoing reasons, Objectors respectfully ask the Court to award no more than 22% of the Settlement Fund to Class Counsel ($9,559,000) and no more than 1% of the Settlement Fund to Michelson & Robinson ($434,500), for a total fee award of 23% of the Settlement Fund ($9,993,500). Class counsel should also be ordered to disclose their fee allocation agreement. Finally, Objectors believe class plaintiffs deserve no more than $10,000 each as incentive awards for their contribution.

Date:    November 20, 2017                    Respectfully Submitted,

*/s George W. Cochran*
George W. Cochran, Esq.
(Pro Hac Vice motion pending)
LAW OFFICE OF GEORGE W. COCHRAN
1385 Russell Drive
Streetsboro, Ohio  44241
Phone: (330) 607-2187
Fax:    (330) 230-6136
Email:  lawchrist@gmail.com
*Attorney for Objectors Kristin Diable and*
*Tamara Dearing*

## Certificate Of Service

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court of the United States District Court for the Southern District of New York on November 20, 2017 by using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date. The foregoing was also sent by ordinary U.S. mail to the following:

**Court**
Clerk's Office
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Settlement Administrator**
Ferrick v. Spotify USA Inc.
c/o GCG
PO Box 10371
Dublin, OH 43017-5571

**Class Counsel**
Henry Gradstein
Maryann R. Marzano
Gradstein & Marzano, P.C.
6310 San Vicente Boulevard, Suite 510
Los Angeles, CA 90048

**Spotify's Counsel**
John Nadolenco
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071

Steven G. Sklaver
Kalpana D. Srinivasan
Susman Godfrey L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Stephen E. Morrissey
Susman Godfrey L.L.P.
1201 3rd Avenue, Suite 3800
Seattle, WA 98101

*/s George W. Cochran*