## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

MELISSA FERRICK, et al.,

                  Plaintiff,

vs.

SPOTIFY USA, INC., et al.,

                  Defendant

_____

: 
: No. 1:16-cv-08412 (AJN)
:
:
:
:
:
:
:
:
:
:

## OPPOSITION TO MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

The copyright owners WATSON MUSIC GROUP, LLC, DM RECORDS, INC., and KINGFISH MUSIC GROUP, INC. (collectively, the "Copyright Owners"), oppose the Motion for Final Approval of Class Action Settlement ("the "Motion for Final Approval") [DE 282, 283] and request that the Court consider the following in connection with the Motion for Final Approval:

**I.**     **THE CLASS ACTION SETTLEMENT INTERFERED WITH ASSETS COVERED BY THE AUTOMATIC STAY IMPOSED IN A PREVIOUSLY FILED BANKRUPTCY PROCEEDING.**

On November 19, 2015, DM Records, Inc. ("DM Records") filed a chapter 11 proceeding in the United States Bankruptcy Court for the Southern District of Florida (the "DM Bankruptcy"). At the time, it had a multi-million dollar judgment entered against it and wanted to avail itself of the bankruptcy code in order to come up with a plan for its operation going forward without having its assets dissipated outside of an organized format. Part of every

bankruptcy proceeding is the automatic stay imposed by 11 U.S.C. § 362 which, among other things, "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). It is settled law that the purpose of this automatic stay is to maintain the status quo by granting "complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected." *SEC v. Brennan*, 230 F.3d 65, 75 (2d Cir. 2000). It also provides a mechanism for centralizing "all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Id.* (citation omitted). In the absence of such controls, we submit that by the time the bankruptcy court has the opportunity to rule upon a plan for the disposition of such assets, there may no longer be anything left.

After the appointment of a chapter 11 trustee, it became apparent that there was not going to be the ability to properly reorganize DM Records, so the determination was made by the chapter 11 trustee to convert the DM Bankruptcy to a chapter 7 proceeding. An order to that effect was entered by the Bankruptcy Court on October 17, 2016 [Bankr. ECF No. 234]. On October 20, 2016, a chapter 7 trustee was appointed to oversee the liquidation of the assets of DM Records [Bankr. ECF No. 236]. At that point, discussions ensued with the chapter 7 trustee about what to do with the assets of DM Records. Ultimately, on June 22, 2017 the chapter 7 trustee filed a Motion to Approve Global Stipulation for Settlement [Bankr. ECF No. 336]. On September 27, 2017, the Bankruptcy Court entered an Order Approving Global Stipulation for Settlement [Bankr. ECF No. 353]. Pursuant to that Order, the chapter 7 trustee assigned the songs at issue in this class action to Watson Music Group, LLC on or about October 23, 2017.

Thereafter, on December 4, 2017, Watson Music Group, LLC commenced an action for intentional copyright infringement of 279 songs against Spotify USA, Inc. in the United States District Court for the Southern District of Florida. *Watson Music Group, Inc. v. Spotify USA Inc.*, Case No. 17-cv-62374-BB (the "Florida Litigation").

During the course of a telephone scheduling conference among counsel for the parties in the Florida Litigation, counsel for Spotify USA, Inc. raised the issue that the copyright claims asserted by Watson Music may be barred due to the impending settlement of the claims in this case and Watson Music's inclusion in such a class action based on the failure to have opted out of the class action on or before September 12, 2017. Among other things, the Copyright Owners claim that the automatic stay provision of the bankruptcy code prevents the dissipation of any such rights through the class certification/opt-out process.

In this case, the class action settlement, among other things, imposed restrictions on the future rights of those works included within the class in the event that the owner of such works did not take some affirmative action during an extremely abbreviated period of time to opt-out. Namely, the holders of the copyrights who are included within the class are granting Spotify an unlimited future license to continue to stream the very songs for which Spotify never sought permission to stream in the first place. This imposes a negative restriction, as a matter of law, on the ownership rights going forward, which together with the monetary rights to past damages, including statutory damages, the Copyright Owners respectfully submit constitutes an improper "exercise of control over property of the estate" within the meaning of the automatic stay provision of the bankruptcy law because it was taken at a time when such assets should have been shielded by the automatic stay. 11 U.S.C. § 362(a)(3). Frankly, the Copyright Owners have only discovered one, non-binding and factually distinguishable, appellate court decision

that even comes close to addressing this point of law. *Thomas v. Blue Cross and Blue Shield Ass'n*, 333 Fed. Appx. 414 (11th Cir. May 28, 2009).

In *Thomas* the insurance company (Blue Cross) had been the subject of a nationwide class action in which it was "alleged that Blue Cross cheated doctors by devising ways to delay, diminish, and deny properly requested payments based on their cost instead of medical necessity." 333 Fed. Appx. at 416. That class action settled. Independently, Blue Cross had commenced a separate action against the doctor and his clinic for fraud based on allegations that he was improperly billing for a bogus treatment for Lyme disease. *Id.* The doctor and his clinic thereafter filed for bankruptcy. After removal to the bankruptcy court, the doctor and his clinic counterclaimed for various claims which the appellate court determined shared the "same operative nucleus of fact" with the class action. *Id.* at 417. The insurance company moved to enjoin the counterclaim based on the settlement of the class action. *Id.* The motion was granted and the doctor and his clinic appealed to the Eleventh Circuit.

On appeal, the doctor and his clinic claimed, among other things, that the "injunction against his counterclaims should not be enforced because it violated the automatic stay in his bankruptcy case." *Id.* at 420. He claimed that the counterclaims were "property of the estate" and therefore covered within the scope of the automatic stay. *Id.* at 421. In rejecting this argument, the Eleventh Circuit found that although the counterclaims were property of the estate, they were not stayed by the automatic stay because the counterclaims had been commenced by the debtor and therefore because they were not an action "against the debtor" they were outside the scope of the automatic stay provisions. The Eleventh Circuit found that "[i]t would not make sense under a plain reading of the statute to treat raising a defense against a non-stayed counterclaim as an 'exercise of control over property.'" *Id.* (citing *Martin-Trigona v. Champion*

4

*Fed. Sav. & Loan, Ass'n*, 892 F.2d 5675, 577 (7th Cir. 1989).

What we are faced within in this case is very different.  Here were are faced with a situation involving the diminution of value of estate assets through a court order entered in an unrelated proceeding during the pendency of the bankruptcy proceeding, prior to the trustee having the opportunity to distribute such an asset (as was ultimately the case in the DM Records Bankruptcy.  The diminution in value is caused by the fact that the class member settlement eliminated a right that the copyright holder had to determine who, if anyone, would have rights to perform the song as well as granted a future license granted to Spotify.  These estate assets must be protected.[1]  Indeed, in one of the cases cited by class counsel and counsel for Spotify, the district court determined that the bankrupt debtor may not be subject to the class action settlement, but that determination is one to be made in the first instance by the court which in that case that retained jurisdiction over the settlement.  *See In re Doctors Health, Inc.*, 2008 WL 88899901, at 8 (D. Md. Mar. 28, 2008).  Following the holding in that case, it would be appropriate for this Court to determine whether the settlement, would be binding upon the asset which had been an asset of the DM Records Bankruptcy during the entire period of this lawsuit through the conclusion of the opt-out period and subject to the automatic stay.  We respectfully submit that the settlement should not be binding upon those assets.

In the Seventh Circuit opinion cited in *Thomas*, Judge Posner reaffirms that "the policy behind the [automatic stay] statute . . . is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the

---

[1]      The cases cited by class counsel and counsel for Spotify are inapplicable to the present circumstances because none of them involved an asset, such as a copyright, which had value independently of a cause of action against the party named in the class action. *See Olick v. Parker & Prsley Petroleum Co.*, 145 F.3d 513, 516 (2d Cir. 1998) (Chapter 13 debtor had standing to litigate claims that were not part of the estate); *In re Santangelo*, 325 B.R. 874, 881 (M.D. Fla. Bankr. 2005) (lawsuit against Fairbanks was not covered by the automatic stay).

estate's assets and distribute them equitably among the creditors." *Martin-Trigona*, 892 F.2d at 577.

It is improper to require the Copyright Owners to have to take affirmative action during the pendency of a bankruptcy proceeding in order to protect assets which are already protected as a matter of law by the automatic stay. 11 U.S.C. § 362. Accordingly, the Copyright Owners move to be excluded from the class covered by the settlement in this case and grant them permission to opt-out of the class created in this case because during the entire period prior to the closing of the opt-out period, the copyrights were assets of an estate governed by an automatic stay.

## II. THE COURT SHOULD AFFORD A NEW OPPORTUNITY FOR CLASS MEMBERS TO REQUEST EXCLUSION IN ACCORDANCE WITH FED. R. CIV. P. 23(e)(4)

Rule 23(e)(4) of the Federal Rules of Civil Procedure provides that "the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion by did not do so." According to the Advisory Committee Notes for this revision (2003 amendment), "[a] decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known."

One of the critical terms of this settlement is how much money is going to be paid to each of the individual songwriters for the songs which were intentionally misappropriated and streamed by Spotify in connection with its business model. Counsel for Spotify could not even provide this Court with such information at the hearing on the confirmation of the settlement agreement and did not even know how many claims were going to be submitted in connection

with the settlement of this class action.  Transcript of Hearing, Dec. 1, 2017, at 9-10.  It is unfair to establish a period of time for opting out of a class action which occurs prior to the class member having material information about how much they will receive as compensation if they continue as members of the class, especially given the disparate valuations suggested by the parties thus far in this case.

It is for this reason that if this Court approves the settlement, the remaining class members should have an additional opportunity to opt-out after additional information is provided to them about their prospective compensation through the settlement process.  Such a process would be a substantial benefit to the remaining class members because every class member who opts-out of the class would increase the compensation available for distribution to the remaining class members.

**III.   APPROVAL OF THIS CLASS ACTION SETTLEMENT ENABLES SPOTIFY TO BENEFIT FROM ITS INTENTIONAL INFRINGEMENT OF COPYRIGHTS BY GRANTING IT A FUTURE LICENSE**

The Copyright Act provides, among other things, that:

> When an individual author's ownership of a copyright . . . has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright . . . shall be given effect under this title, except as provided under title 11.

17 U.S.C. § 201(e).  "A copyright owner's right to exclude others from using his property is fundamental and beyond dispute."  *The Authors Guild v. Google, Inc.*, 770 F.Supp.2d 666, 681 (S.D.N.Y. 2011).  In that case, which rejected a class action settlement, the Court found that under the settlement agreement, "if copyright owners sit back and do nothing, they lose their rights."  *Id.*  The Court further stated that "[a]bsent class members who fail to opt out will be

deemed to have released their rights even as to future infringing conduct." *Id.* This is precisely the situation presented in this case, especially as to the Copyright Owners, who are going to lose substantial rights should they not be permitted to remove themselves from this settlement and/or have the final settlement rejected by this Court.

## IV. THE SETTLEMENT FAILS TO ADDRESS THE STATUTORY DAMAGES REMEDY FOR INFRINGEMENT INCLUDING INTENTIONAL, WILLFUL INFRINGEMENT OF COPYRIGHTS BY SPOTIFY

The Spotify Settlement Class consists of all persons or entities who own copyrights in musical compositions for which a certificate of registration was applied for or issued on or before June 29, 2017 which Spotify made available for streaming or downloading without a license. [DE 177]. Pursuant to the Copyright Clause of the United States Constitution, Congress enacted the Copyright Act, which in Title 17 U.S.C. 501 states that "[a]nyone who violates any of the exclusive rights of the copyright owner…is an infringer of the copyright." This class by definition has had its exclusive rights violated by Spotify.

Congress also enacted a penalty for violating those exclusive rights to registered copyrights, statutory damages, which the court may award "in a sum of not less than $750 or more than $30,000 as the court considers just."[i] 17 U.S.C. 504(c)(1). Under this statute, the Court is required to award at least $750.00, yet the class Plaintiff's counsel at the settlement approval hearing told the Court that "[n]o one knows" how much the class members will receive per work, and estimated that it might be $50.00 or $100.00 using "average rough math." [DE 356, at 15]. The Wixen Objectors, by contrast, estimated that the settlement may result in a "settlement payment of $3.82 per infringed song." [DE 208, p.7]. This range of potential

payment is so far below the statutory minimum that the settlement must be reconsidered or a post damages determination opportunity to opt out must be given.

The unfairness of approving such a low settlement is all the greater because the crux of this class action case is the claim of willful infringement, which allows for the court to increase damages to $150,000 per infringement. Willfulness will not be hard to find in a case in which it is uncontested that Spotify, a sophisticated multi-national company, was year after year holding a reserve for unpaid mechanical royalties in the tens of millions per year and steadily rising. [DE 288 p. 5 Tables 1a. & 1b.]. This treasure chest of infringement profits makes it impossible for Spotify to deny that it knew for many years it was making a lot of money on unlicensed music without paying the owners their due and yet, despite this knowledge, the Spotify band played on. The existence of that reserve is a patent admission by Spotify of willful infringement on an enormous scale, which is exactly what happened here, further increasing the available damages and hence the value of the infringement claims.[2]

Though full statutory damages have been questioned as being excessive in the context of extremely large numerosity class action cases, *e.g., Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13 (2d Cir. 2003), the facts here much more strongly support the use of those damages as a reasonable yardstick for reviewing settlement value. First, this class amounts to only a small fraction of the numerosity contemplated in cases like *Parker*, and, also unlike *Parker*, the wrongdoing is not just a technical violation of an administrative statute like the Cable

---

[2] There is not even an argument made that Spotify could possibly be an innocent infringer under 17 U.S.C. 504(c)(2), but even if there was such an argument to be made, the $200 minimum damages awardable after a reduction would still be more than double the highest estimate of this settlement's per work award and more than fifty times the lowest estimate [DE 356, at 15; DE 208, at 7].

Communications Policy Act. *Id.* Instead, the wrongdoing here is a multi-year infringement of these authors' exclusive rights, the importance of which was sufficient for the subject to be in included in the Constitution. U.S. Const. art. I, § 8, cl. 8.

## V.    CONCLUSION

For the reasons set forth above, the Copyright Owners respectfully request that the Court deny the Motion for Final Approval, together with granting the Copyright Owners such other and further relief as to this Court appears just and proper.

Dated:  February 8, 2018

Respectfully submitted,

/s/ Seth P. Robert

Seth P. Robert (SR 6940)
**BROWN ROBERT LLP**
150 North Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone: 954.832.9400
Facsimile: 954.832.9430
E-Mail: srobert@brownrobert.com

*Attorney for Watson Music Group, Inc, DM Records, Inc., and Kingfish Music Group, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 8, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's SDNY Procedures for Electronic Filing.


<u>/s/ Seth P. Robert</u>
Seth P. Robert